**Gary Lynn CASSELL, b/n/f Kenneth Joe Cassell**

v.

**LOYOLA UNIVERSITY.**

Civ. A. No. 6423.

United States District Court
E. D. Tennessee, N. D.

Dec. 17, 1968.

Wilson S. Ritchie, Knoxville, Tenn., for plaintiff.

W. W. Kennerly, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

A motion to dismiss has been filed in this diversity action arising out of an alleged breach of contract. The plaintiff, Gary Cassell, a minor, was a student at Florida Keys Junior College when contacted by Ron Greene, the head basketball coach of the defendant Loyola University of New Orleans, Louisiana. Greene's initial contacts indicated interest in plaintiff's accepting an athletic scholarship to play basketball for the defendant university. On February 19, 1968, plaintiff says that he received in Florida a phone call from Greene in

Louisiana and that Greene offered and plaintiff accepted a full athletic scholarship with defendant. A letter confirming the award of the scholarship was addressed that same day to Cassell in Florida and signed by Greene in New Orleans. Enclosed with the letter were three copies of the "scholarship contract" with directions that they be signed and returned to Loyola for signing by the Chairman of the Scholarship Committee upon Cassell's admission to the University.

Plaintiff alleges in his complaint that Loyola University, through its agents, knew that plaintiff was a citizen of Tennessee, residing in Knoxville, and was temporarily in Florida. He says that he was directed to sign the contract and send it to his parents in Knoxville. Plaintiff's father signed the contract in Knoxville on March 19, 1968 and forwarded all copies to Loyola.

Plaintiff says that he learned that defendant had replaced Greene as basketball coach. Although plaintiff has held himself ready to fulfill his part of the alleged contract, he says that Loyola has refused to grant him the scholarship.

Service of process was completed pursuant to Federal Rule of Civil Procedure 4(e) according to the provisions of Tennessee's "long arm" statute, Tennessee Code Annotated Section 20–235. That statute provides, in part, that personal service may be had upon persons or corporations not to be found within the state when the action arises out of the transaction of any business within the state.

Defendant filed a motion to dismiss for want of personal jurisdiction over Loyola University, a corporation formed under the laws of Louisiana and with its principal place of business in that state. The only activities in which defendant has engaged in the State of Tennessee are those described by plaintiff as arising from the alleged contract and a vague allegation of occasional athletic or scholastic student recruitment. By affidavit of the President of the University it appears that the defendant has no offices in Tennessee.

The Tennessee "long arm" statute was intended to extend personal jurisdiction to the limits of federal constitutional due process. Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (C.A. 6, 1968); Hamilton National Bank of Chattanooga v. Russell, 261 F. Supp. 145 (E.D.Tenn.1966). Therefore the issue before the court is whether the facts herein recited establish "minimum contacts" with the State of Tennessee of such nature that the maintenance of this action does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Jurisdiction is here asserted on the basis of a single transaction touching the forum state. The Supreme Court upheld jurisdiction based on a single contact in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); but that case involved reissuance of an insurance policy and payment of premiums. Insurance contracts protecting its citizens have traditionally been particularly subject to a state's power to control. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, the Court limited the *McGee* decision to require "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws."

Our Sixth Circuit recently had occasion to interpret Tennessee's long arm statute in light of *International Shoe*, *McGee* and *Hanson* decisions. In Southern Machine Co. v. Mohasco Industries, supra, our circuit held that a federal court in Tennessee could acquire jurisdiction over a non-resident corporation even though its only substantial contact with Tennessee was the contract out of which the action arose. The contract licensed a Tennessee company to manufacture in Tennessee the tufting machines of the defendant. The court found

inconclusive the facts that the defendant had no agents in the state, that the contract was negotiated by telephone with only one party in Tennessee, and that the contract was ultimately executed in New York. The three essential elements which the court required for the assertion of jurisdiction were as follows: (1) that the defendant has purposely availed itself of the privilege of transacting business in Tennessee, at least to the extent that the activity will have a reasonably foreseeable impact on the commerce of Tennessee; (2) that the cause of action arises out of business transacted in the state; and (3) that Tennessee has sufficient interest in the controversy to make it reasonable to compel the defendant to come to Tennessee and defend the suit.

 The present case would fall within the *Southern Machine* holding except for two distinguishing features which the court deems decisive. In the first place the alleged contract was not as directly related to Tennessee as that in *Southern Machine*. No performance was contemplated in Tennessee, and none of the negotiations occurred in the state. The only connections with Tennessee were the domicile of the student and the signing of the contract by his father in Knoxville. Under that state of facts the Court holds that the asserted cause of action does not arise out of business transacted in Tennessee.

A more fundamental distinction from the *Southern Machine* decision is the nature of the business activity involved. The Southern Machine contract was an ordinary commercial agreement with foreseeable economic repercussions in the State of Tennessee. The foreign corporation purposely sought to avail itself of activity in Tennessee to make a profit. Although college athletics certainly involve some elements of business activity, an athletic scholarship program is not such commercial activity as falls within the intendment of the "transaction of any business" language of the Tennessee statute. Loyola University is a non-profit organization which does not seek profitable activities in this state. Any impact on commerce in Tennessee is too remote to justify the exercise of jurisdiction.

Traditional notions of fair play and substantial justice prevent the Court from holding that a non-profit educational institution renders itself subject to service of process in every state of the union from which it may seek or attract outstanding athletes and scholars. Such a decision would as well place an unreasonably onerous burden on small educational institutions throughout the nation.

The motion to dismiss for lack of personal jurisdiction must be, and same hereby is, sustained.