Clinton **HARDNETT**, Plaintiff,

v.

**DUQUESNE UNIVERSITY**, Defendant.

No. PJM 94–2914.

United States District Court,
D. Maryland,
Southern Division.

Sept. 11, 1995.

Joseph B. Chazen, Leslie A. Pladna, Riverdale, MD, for plaintiff.

Francis B. Buckley, Baltimore, MD, for defendant.

## OPINION

MESSITTE, District Judge.

### I.

As of October 25, 1991, Clinton Hardnett, a Maryland resident, was a student in the sophomore class at Duquesne University in Pittsburgh, Pennsylvania. On that date, he was injured while attending a rock concert at the University's A.J. Palumbo Arena. Hardnett has sued Duquesne in Maryland federal court, contending that his injury was the result of the university's negligence. Duquesne asks the Court to dismiss the case for lack of personal jurisdiction. The Court finds that personal jurisdiction over Duquesne is indeed lacking, but in the interests of justice, upon its own motion, will transfer the case to the United States District Court for the Western District of Pennsylvania, sitting at Pittsburgh.

### II.

When a court's personal jurisdiction is challenged, the question is one for the judge, with the burden on the plaintiff to prove the grounds for jurisdiction by preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993). When the court decides a personal jurisdiction dismissal motion without an

evidentiary hearing, plaintiff need only prove a *prima facie* case, with all reasonable inferences being resolved in plaintiff's favor. *Id.* at 60.

### III.

The undisputed facts are that Hardnett was a Maryland resident who requested college application materials from Duquesne, based on its reputation of having "one of the best music programs on the East Coast." Duquesne mailed the materials to Hardnett at his home in Maryland, he mailed an application for admission from Maryland, and Duquesne eventually mailed him a letter of acceptance here, including a partial scholarship. Hardnett also submits that as of Spring 1995—some three and a half years after the alleged accident—Duquesne planned to send a representative to attend a national college fair in Montgomery County, Maryland, provided a "800" number for Maryland students to call to obtain more information about the university, and made available to interested persons a recruitment video. Apart from these "contacts" with the State of Maryland, none of which Duquesne disputes, Hardnett suggests no others.

### IV.

■ A federal court in a diversity case has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute permits jurisdiction to the limits permitted by due process. *Id.*[1]

■ .Absent the traditional bases of consent, domicile or physical presence, the extent to which a federal court can exercise personal jurisdiction depends on the nature and quality of a defendant's "contacts" with the forum state. If a nonforum defendant's activities in the forum state are "continuous and systematic," a federal court may exercise jurisdiction as to any cause of action—even if unrelated to defendant's activities within the state. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). If a nonforum defendant's "contacts" within the forum are not sufficiently "continuous and systematic" for general jurisdiction, it may still be subject to specific jurisdiction for claims related to its activities, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In either case, due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotation omitted). The test is whether, in a given case, the forum state has a sufficient relationship with the defendant and the litigation to make it reasonable to require defense of the action in a federal court located in the forum state.

■ "[B]road constructions of general jurisdiction should be generally disfavored", *Nichols,* 991 F.2d at 1200. Singular or isolated items of activities in a state do not suffice for general jurisdiction, nor does continuous activity of some sort necessarily satisfy the requirement. *Id.* at 1199. The activities must be "so substantial and of such a nature as to justify suit against [the nonforum defendant] on causes of action arising

---

1. Maryland's long-arm statute provides that a court may exercise personal jurisdiction over a person who directly or by an agent: (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply goods, food, services, or manufactured products in the State; (3) Causes tortious injury in the State by an act or omission in the State; (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; (5) Has an interest in, uses, or possesses real property in the State; or (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing. Md.Cts. & Jud.Proc.Code Ann. § 6–103(b) (1995 Repl.Vol.).

from dealings entirely distinct from those activities." *Id.*

■ Specific jurisdiction involves an expanded factual inquiry into the precise nature of the defendant's contacts with the forum, the relationship of those contacts with the cause of action, and a weighing of whether these contacts satisfy "threshold demands of fairness." *Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 552, 654 A.2d 1324, 1330 (1995). Specific personal jurisdiction requires a tri-partite showing: (1) that the nonforum defendant purposely directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) that plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) that the forum's exercise of personal jurisdiction in the case is reasonable, *i.e.* is consistent with "fair play and substantial justice". *Burger King Corp.*, 471 U.S. at 477–78, 105 S.Ct. at 2185.

■ Whether general or specific jurisdiction is sought, a defendant's "contacts" with a forum state are measured as of the time the claim arose. *See, e.g., Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir.1990) ("Only contacts occurring prior to the event causing the litigation may be considered."); *see also Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287, n. 2 (4th Cir.1987).

### V.

■ To begin, none of the alleged contacts that Duquesne may have had with the State of Maryland as of the Spring of 1995 can be taken into account, since the only time when contacts are measured is as of the time the claim arose, i.e. October 1991. *Id.* The sole "contacts" of defendant that remain in the case are thus the sending of literature to Hardnett in Maryland, his returning of a completed application from this State, and finally his receipt of a letter of acceptance in Maryland. No claim for general jurisdiction can be constructed on this basis, nor indeed could it be constructed even if it were true as

of the time of the claim that a recruiter had visited a college fair in this State, that a toll free number was available for further inquiries or that video presentations were mailed into the State. Such contacts, quite simply, are not sufficiently "continuous and systematic" to make Duquesne University susceptible to every sort of claim that might be filed in Maryland, including those unrelated to the specific transaction in this case. Hardnett cites no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state [2] and in fact a case from the United States Court of Appeals for the Third Circuit holds directly to the contrary. *In Gehling v. St. George's Sch. of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir.1985), parents filed suit in Pennsylvania federal court against a medical college located in Grenada, West Indies, based on the alleged wrongful death of their son, who died while participating in a college-sponsored event in Grenada. The evidence showed that the decedent had applied from Pennsylvania for admission to the Grenada school, that an acceptance was mailed from Grenada to Pennsylvania and that students from Pennsylvania had applied and were accepted for admission at the college. Beyond that, representatives of the college had made a "media swing" through Pennsylvania apparently at or about the time of the decedent's application and the Grenada college maintained a "feeder" relationship with a Pennsylvania college. Despite this, the Third Circuit found that the Grenada college lacked "the continuous and substantial business relationship" with Pennsylvania that would support general jurisdiction against it. For like reasons, Duquesne's extremely limited nexus with this State precludes any finding of general jurisdiction by this Court.

■ Hardnett's argument for specific jurisdiction fares no better. Again the *Gehling* Court, on facts more appealing than those present here, declined to find that the Grenada medical college had purposely availed itself of the privilege of acting within Pennsylvania, thus rejecting specific as well as gen-

---

**2.** Hardnett cites *Hahn v. Vermont Law Sch.*, 698 F.2d 48 (1st Cir.1983) in support of his argument that general jurisdiction should be found in this case. In fact, as will be discussed *infra, Hahn* considers specific, not general jurisdiction under the Massachusetts long arm statute.

eral jurisdiction over the nonforum school. *Hahn v. Vermont Law Sch., supra,* a case upon which Hardnett places considerable reliance, is easily distinguishable. Although the First Circuit in *Hahn* found that the mailing of an application and ultimately an acceptance letter from Vermont to a student in Massachusetts constituted a transacting of business under the Massachusetts long-arm statute, the record further indicated that Vermont Law School was actively involved in marketing itself in Massachusetts; that over a relevant period close to 10% of the school's first year class had come from Massachusetts; that faculty members had visited at least 5 Massachusetts colleges for the purpose of recruiting; and that the school had placed advertisements in Boston newspapers. Assuming that *Hahn* was correctly decided, Hardnett still does not approximate its factual base. Following *Gehling,* the Court finds that Duquesne did not purposely direct its activities to residents of this state nor did it purposely avail itself of the privilege of conducting activities in this State in accord with specific jurisdiction analysis.

Equally fatal to Hardnett's argument that specific jurisdiction lies, his claim does not "arise out of" Duquesne's forum-related contacts. Whereas Hardnett's claim is one for personal injury based in tort, Duquesne's contacts with Maryland were wholly contractual in nature. The *Hahn* case illustrates this distinction. Hahn's claim was essentially for breach of contract based on what he characterized as a contractual relationship that had been created between him, a Massachusetts resident, and the law school, a Vermont institution. As the First Circuit observed:

> Although the Massachusetts courts have not defined the scope of the "arising from" requirement of the long-arm statute, we have no doubt that it has been satisfied when the cause of action is for an alleged breach of contract and the business transacted was instrumental in the formation of the contract.

*Hahn,* 698 F.2d at 51.

In the later case of *Marino v. Hyatt Corp.,* 793 F.2d 427 (1st Cir.1986), the First Circuit made it clear that a hotel guest's action against a hotel owner for injuries received in a slip and fall in a hotel room in Hawaii did not "arise from" her reservation of the room in Massachusetts within the meaning of that state's long-arm statute. *Hahn,* having been a suit for breach of contract based on contractual contacts, was distinguished from *Marino.*

This is not to say that claims in tort arising from contacts contractual in nature can never be asserted against a nonforum defendant. The result might well be different, for example, if Hardnett had injured himself while on a visit to the Pittsburgh campus at the instance of Duquesne representatives who recruited him in Maryland. *See Presbyterian Univ. Hosp., supra* (claim for medical malpractice arises out of solicitation in Maryland by Pennsylvania hospital). The nexus here, however, is far more attenuated. It is interesting to note that Hardnett was injured during his sophomore year at Duquesne, the school's Maryland contacts presumably having come some time prior to his freshman year. The time lapse alone suggests that Hardnett's fall at the rock concert did not "arise out of" the simple back and forth correspondence he had with the school more than a year earlier.

Finally there is the matter of whether Maryland's exercise of personal jurisdiction would be reasonable in this case, that is, consistent with "fair play and substantial justice." The Court concludes that it would not. Whatever argument might be made in favor of personal jurisdiction over nonforum commercial establishments that advertise for Maryland customers, *See, e.g., Greenwood v. Tides Inn, Inc.,* 504 F.Supp. 992 (D.Md. 1980); *Compare Camelback Ski Corp. v. Behning,* 312 Md. 330, 539 A.2d 1107 (1988), the same cannot be said of a nonforum university. As the United States District Court for the Eastern District of Tennessee observed in *Cassell v. Loyola Univ.,* 294 F.Supp. 622 (E.D.Tenn.1968):

> A more fundamental distinction from the Southern Machine decision is the nature of the business activity involved. The Southern Machine contract was an ordinary commercial agreement with foreseeable economic repercussions in the State of

Tennessee. The foreign corporation purposely sought to avail itself of activity in Tennessee to make a profit. Although college athletics certainly involve some elements of business activity, an athletic scholarship program is not such commercial activity as falls within the intendment of the "transaction of any business" language of the Tennessee statute. Loyola University is a non-profit organization which does not seek profitable activities in this state. Any impact on commerce in Tennessee is too remote to justify the exercise of jurisdiction.

Traditional notions of fair play and substantial justice prevent the Court from holding that a non-profit educational institution renders itself subject to service of process in every state of the union from which it may seek or attract outstanding athletes or scholars. Such a decision would as well place an unreasonably onerous burden on the small educational institutions throughout the nation.

*Id.* at 624. *See also Gehling,* 773 F.2d at 542 ("Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides.").

■ The net result is that Hardnett has proven none of the grounds necessary for a finding of specific (much less general) jurisdiction in this case. While this finding would ordinarily be grounds for the Court to grant Defendant's Motion to Dismiss, the Court observes that under 28 U.S.C. § 1406(a) it may, if a civil action is commenced in the wrong district, transfer the case to any district in which it could have been brought. The Court is authorized to act pursuant to this statute even if it finds that in personam jurisdiction of the defendant is lacking. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). While there may be some cases in which dismissal could be ordered,[3] transfer is to be preferred especially where, as here, the statute of limita-

tions will otherwise have run. *See, e.g., Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2nd Cir.1978). The Court opts for that remedy in the present case and will accordingly transfer the proceedings to the Western District of Pennsylvania, the Federal Court in which Duquesne University is located. In view of his inappropriate choice of the Maryland forum, however, Plaintiff will be assessed costs to this point.

A separate Order implementing this decision will be entered.

### ORDER

Upon consideration of Defendant Duquesne University's Motion to Dismiss based on lack of personal jurisdiction and Plaintiff's Opposition thereto, it is for the reasons set forth in the accompanying Opinion this 11th day of September, 1995

ADJUDGED and DECREED that personal jurisdiction over the Defendant Duquesne University is lacking in this case; and it is further

ORDERED, by the Court, *sua sponte,* that this case is hereby TRANSFERRED to the United States District Court for the Western District of Pennsylvania, sitting in Pittsburgh; and it is further

ORDERED that the cost of the proceedings to this point shall be paid by Plaintiff.

---

**3.** Arguably this is such a case, since Plaintiff's counsel should have reasonably foreseen that the Maryland federal court lacked jurisdiction over the action and Defendant has been made, at some cost, to defend in a foreign and improper forum. *See Nichols,* 991 F.2d at 1201. Notwithstanding this, the Court has discretion to transfer the action. *Id.*