**Tyrone A. DAVIS, Jr., Appellant,**

v.

**BAYLOR UNIVERSITY,**
**et al., Respondents.**

**No. WD 53919.**

Missouri Court of Appeals,
Western District.

June 30, 1998.

As Modified Sept. 22, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1998.

Scott W. Mach, Kansas City, for Appellant.

Joel K. Goldman, Joseph H. Knittig, Teresa A. Reinking, Kansas City, for Respondents.

Before ULRICH, C.J., P.J., and HOWARD and RIEDERER, JJ.

HOWARD, Judge.

Tyrone A. Davis, Jr. appeals from an order of the trial court dismissing his petition for lack of personal jurisdiction. Davis contends that the trial court erred by holding he had failed to demonstrate that the defendants had sufficient minimum contacts with the State of Missouri.

Reversed and remanded.

Davis brought an action against Baylor University, located in Waco, Texas, and against a number of its employees, alleging tortious conduct in connection with their efforts to ensure that he would play for Baylor's basketball team. In 1992, Davis was a student at State Fair Junior College in Sedalia, Missouri, where his performance as a basketball player attracted the attention of Baylor's coaching staff. During the summer of 1992, several members of Baylor's coaching staff began efforts to recruit Davis, and these efforts included written correspondence, dozens of telephone calls, and numerous personal visits with Davis. Defendant Kevin Gray, an assistant coach at Baylor, made as many as seven trips into Missouri to recruit Davis; defendant Darrel Johnson, another assistant coach, made three such trips into the state. In November of 1992, Davis signed a National Letter of Intent to play basketball at Baylor.

When Davis left State Fair Community College in the spring of 1993, he was thirteen credit hours short of the amount he needed to be eligible to play intercollegiate basketball at Baylor. The Baylor coaching staff arranged for Davis to make up this deficiency by taking four hours of correspondence courses from State Fair Community College and nine hours of correspondence courses from the Southeastern College of the Assemblies of God ("SECAG"), which was a school in Florida.

Davis enrolled in and completed the SECAG courses while living and working in Waco, Texas during the summer of 1993. To ensure that Davis passed the final examina-

tions which were part of the SECAG correspondence courses, someone from Baylor altered a number of Davis' written answers and submitted the doctored responses to SECAG. This misconduct, which also occurred in Waco, Texas, came to light as part of a larger pattern of improprieties committed by members of the men's basketball coaching staff. A number of investigations ensued, and Davis was barred from playing the entire 1993–1994 season while the basketball program was scrutinized.

Ultimately, three members of the coaching staff were tried on charges of conspiracy, wire fraud, and mail fraud, and were convicted. Davis himself transferred to Kansas State University, where he completed his senior year as the starting center for the basketball team. After graduating, he went on to play professional basketball in Japan.

Davis brought an action against Baylor and a number of its employees, and his original and amended petitions set out the following causes of action: Count I, tortious interference with his prospective business opportunities in college and professional basketball; Count II, tortious interference with his contractual or business relationship with Baylor University; Count III, outrageous conduct; Count IV, false light defamation; Count V, fraud; Count VI, negligent hiring by Baylor of the various individual defendants; Count VII, negligent supervision by Baylor of the various individual defendants; Count VIII, violation of Missouri's Consumer Protection Act; Count IX, violation of Texas' Consumer Protection Act; Count X, civil conspiracy; and Count XI, breach of contract. Davis alleged that, because of the tortious conduct of the defendants, he was forced to miss a season of intercollegiate competition, and his opportunities for a lucrative career in professional basketball were reduced. He also alleged that the tortious conduct of the defendants caused him to relocate himself and his family, and associated his name with a major scandal, causing him stress and fear of further repercussions.

The defendants filed motions to dismiss Davis' petition for lack of personal jurisdic-

tion pursuant to Rule 55.27(a)(2). The motions were sustained by the trial court, which determined that "although the acts of recruitment of plaintiff by defendant's staff persons and the execution of a national letter of intent to play collegiate basketball may be considered transaction of business within the State of Missouri, the plaintiff has failed to demonstrate that defendants have or had sufficient minimum contacts with Missouri to invoke personal jurisdiction over defendants."

In his sole point on appeal, Davis claims that the trial court erred by sustaining the defendants' motions to dismiss on the ground that Davis had not demonstrated sufficient minimum contacts with Missouri to subject the defendants to personal jurisdiction. We note that, although the trial court did not state that its dismissal was with prejudice, nevertheless the trial court's decision effectively precludes Davis from refiling his claim in Missouri, and therefore it is an appealable judgment. *Chromalloy American v. Elyria Found.*, 955 S.W.2d 1, 3–4 (Mo. banc 1997).

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) establishes that, for personal jurisdiction to exist, due process requires a defendant to have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *United Mo. Bank of Kansas City v. Bank of New York*, 723 F.Supp. 408, 410 (W.D.Mo.1989). Minimum contacts may give rise to either "general" or "specific" jurisdiction. *Id.* When a state exercises jurisdiction over a nonresident defendant in a suit "arising out of or related to" the defendant's contacts with the forum, the state is exercising specific jurisdiction over the defendant. *Id.* When, on the other hand, a state exercises personal jurisdiction over a nonresident defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is exercising general jurisdiction over the defendant. General personal jurisdiction requires that a nonresident defendant's contacts with the forum state be "substantial and continuous." *Id.* Because more substantial contacts must be shown to establish gen-

eral personal jurisdiction, courts rarely find that an out-of-state defendant's contacts are sufficient to invoke such jurisdiction, so the great majority of cases focus on claims of specific jurisdiction. *See generally* Note, *Specific Personal Jurisdiction and the "Arise from or Relate to" Requirement: What Does It Mean?* 50 Wash & Lee L.Rev. 1265, 1269 (1993).

In Missouri, the issue of minimum contacts is incorporated into a two-part test which a plaintiff must satisfy in order to establish personal jurisdiction over a nonresident defendant. First, the cause of action must arise out of acts enumerated in the long-arm statute, § 506.500, RSMo 1994. Second, the defendant must have minimum sufficient contacts with Missouri so that the exercise of personal jurisdiction would not violate due process. *In re Estate of Halverson,* 840 S.W.2d 280, 282 (Mo.App. W.D.1992). Because of the long-arm statute's requirement that the cause of action must "arise out of" the defendant's contacts with Missouri, federal courts applying § 506.500 have concluded that the statute prohibits the assertion of general jurisdiction over a nonresident defendant. *See e.g. United Mo. Bank,* 723 F.Supp. at 410–411.

Whether § 506.500 allows for general personal jurisdiction is not relevant in this case, as Davis seeks jurisdiction on the grounds of specific jurisdiction. The parties disagree as to whether Davis' various causes of action "arise from or relate to" Baylor's contacts with the forum state. Davis argues that at the heart of this case is the fact that Baylor came to Missouri to recruit him, and if Baylor had not initiated such contact with him in Missouri, none of the events giving rise to his cause of action would have occurred. Baylor, on the other hand, argues that the heart of this case is the misconduct in Texas involving the SECAG correspondence course, and that this activity is entirely unrelated to the Missouri contacts.

The parties' disagreement in this case reflects the disagreement nationwide over the "arise from or relate to," requirement, which has never been clarified by the U.S. Supreme Court. The interpretation of this phrase has differed from jurisdiction to jurisdiction. To date, the courts have applied two general theories of interpretation for the "arise from or relate to" requirement: (1) the "but for" test, and (2) the proximate cause/substantive relevance test. *See Note, supra,* 50 Wash. & Lee L.Rev. at 1276–77. In our case, Davis advocates the "but for" test, while Baylor has adopted the proximate cause/substantive relevance test.

The "but for" test provides that, in determining whether a forum can exercise personal jurisdiction over a defendant, the contact in question must be a "but for" cause of the plaintiff's injury. Rose, *Related Contacts and Personal Jurisdiction: The "But For" Test,* 82 Cal. L.Rev. 1545, 1568 (1994). In such a test, personal jurisdiction is proper if the plaintiff can trace the chain of events leading up to the cause of action and find that the defendant's contact is a link in this chain. On the contrary, the proximate cause/substantive relevance test asks whether the facts constituting the defendant's contacts in the forum state are relevant to the proof of the elements of the plaintiff's cause of action. *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 553 (1994). Phrased differently, it asks whether the alleged harm to the plaintiff was proximately caused by the contacts in the forum state, in the sense that the contacts were the immediate preceding legal cause of the plaintiff's injury. *See Vons Companies v. Seabest Foods, Inc.,* 14 Cal.4th 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085, 1102–1112 (1996).

An overview of these two tests, and of the respective strengths and weaknesses of each, can be found in *Note, supra,* 50 Wash. & Lee L.Rev. at 1277–1301, *Related Contacts,* 82 Cal. L.Rev. at 1569–1594, and *Vons,* 58 Cal. Rptr.2d 899, 926 P.2d at 1102–1112. The fundamental criticisms are that the but for test is too broad and the proximate cause/substantive relevance test is too narrow. Thus, the but for test has been faulted as being too lax and permitting a virtually unlimited exercise of jurisdiction, as, in theory, the standard may include any historical cause of the plaintiff's injuries. As Professor Lea Brilmayer points out, a defendant's birth is a historical but for cause of his subsequent tortious conduct, yet the location of one's

birth normally should not determine personal jurisdiction. Brilmayer, *Related Contacts and Personal Jurisdiction*, 101 Harv. L.Rev. 1444, 1462 (1988). The proximate cause/substantive relevance test, it is argued, is inadequate because it fails to accommodate those situations where personal jurisdiction would be fair despite the fact that the defendant's contact was not the immediate cause of, or constitutes an element of, the plaintiff's cause of action.

The strengths and weaknesses of both tests have been thoroughly addressed by the California Supreme Court in *Vons*, which found the but for test to be overly broad, the proximate cause/substantive relevance test to be too narrow or restrictive, and declined to adopt either of the two prevailing tests. 58 Cal.Rptr.2d 899, 926 P.2d at 1112. The *Vons* court added that such mechanical tests are inconsistent with the court's basic task in a determination of personal jurisdiction, which is to determine if the exercise of such jurisdiction would comport with "fair play and substantial justice" on a case-by-case basis. *Id.* Instead, the *Vons* court re-affirmed a test already formulated in earlier California case law, finding that the test possessed the necessary flexibility for such an analysis. 58 Cal.Rptr.2d 899, 926 P.2d at 1093–1097.

In numerous law review articles, commentators have argued for a modification of the stark duality of these two tests, seeking a greater flexibility of analysis and urging a rejection of mechanical determinations of fairness. *See e.g. Note, supra,* 50 Wash. & Lee L.Rev. at 1296–1301 (advocating modifying the but for test allowing courts to engage in a "sliding scale" type approach.) *Related Contacts,* 82 Cal. L.Rev. at 1569–1594 (advocating modifying the substantive relevance test to include exceptions in certain legal subject areas where it is too narrow). Another commentator has suggested that existing tests be supplemented by a sliding scale model of the relationship between the two key variables: the extent of the defendant's forum contacts on the one hand and the proximity of the connection between those contacts and the plaintiff's claim on the other. Richman, *Review Essay: Part I—Casad's Jurisdiction in Civil Actions, Part II—*

*A Sliding Scale to Supplement the Distinction between General and Specific Jurisdiction,* 72 Cal. L.Rev. 1328, 1340–1346 (1984).

Like the California Supreme Court in *Vons,* this court also has existing precedent which offers a flexible alternative to the limitations of either the but for or the proximate cause/substantive relevance tests. It is a balancing test akin to the "sliding scale" approach advocated by some of the commentators referred to above. In this analysis, there are five factors to be considered: the nature and quality of the contacts with the forum state, the quantity of contacts with the forum state, the relation of the cause of action to the contacts, the interest of the forum state in providing a forum for its residents, and the convenience to the parties. *Marler v. Hiebert,* 943 S.W.2d 853, 857 (Mo. App. W.D.1997). The first three factors are of primary importance, while the last two are of secondary importance. *Id.*

This five-part test originated in the Eighth Circuit, in *Aftanase v. Economy Baler Company,* 343 F.2d 187, 197 (8th Cir.1965), *see Related Contacts,* 82 Cal. L.Rev. at 1558, 1584, and this court adopted the Eighth Circuit test in *Dillaplain v. Lite Industries, Inc.,* 788 S.W.2d 530, 534 (Mo.App. W.D. 1990). This court has also emphasized the general rule that a defendant's minimum contacts with Missouri must be such that maintenance of the action does not offend traditional notions of fair play and substantial justice, that the defendant purposefully availed itself of the privilege of conducting activity in Missouri, and that the defendant should reasonably anticipate being haled into court here. *Marler,* 943 S.W.2d at 856.

There are no Missouri cases which apply this test to the issue of specific personal jurisdiction under similar circumstances, i.e., those of a student bringing an action against an out-of-state college or university. However, the parties do cite similar cases from other jurisdictions in support of their respective positions, and it is instructive to note the conclusions reached in those cases.

Davis relies upon *Hahn v. Vermont Law School,* 698 F.2d 48 (1st Cir.1983), and *Barile v. University of Virginia,* 2 Ohio App.3d 233, 441 N.E.2d 608 (1981). In *Hahn,* a Massa-

chusetts resident entered the Vermont Law School, and, in his third year, failed a course in Secured Transactions. He then filed a breach of contract action against the school, alleging that his contract with the school had been breached when the school allowed the instructor of the course to teach without supervision, when the instructor used arbitrary grading procedures, and when the school administration failed to review and investigate Hahn's complaint.

The First Circuit determined that the school's actions of mailing application information and then an offer of admission to Hahn in Massachusetts constituted sufficient minimum contacts with the State of Massachusetts to subject the school to the exercise of personal jurisdiction there, particularly in light of the fact that the school's activities with respect to Hahn were not isolated occurrences, but instead were part of a larger effort to serve the market for legal education in Massachusetts. 698 F.2d at 52. The *Hahn* court noted that, over the years, students from Massachusetts comprised close to ten percent of the school's first-year class, that faculty members had visited five Massachusetts colleges for the purpose of recruiting, and that the school had placed advertisements in Boston newspapers. *Id.*

The First Circuit also noted that the district court had found it significant that the cause of action stemmed from activities—Hahn's receipt of a failing grade and his efforts to resolve the matter through administrative channels—which occurred in Vermont. The First Circuit concluded, however, that the cause of action nevertheless arose from the transaction of business in Massachusetts, as it was a lawsuit for breach of contract and the business transacted was instrumental in the formation of the contract. *Id.* at 51.

In *Barile*, the plaintiff was an Ohio resident recruited to play football for and attend college at the University of Virginia. Members of the University's athletic department made two trips to Barile's Ohio home to induce him to come to Virginia as a student athlete. At some point during the process, Barile was promised that he would receive proper medical care and attention for any injuries he might receive while playing football. Barile signed with the University and subsequently broke his wrist while playing football. For two years after the incident, the University provided no medical attention or care for the injury beyond taping his wrist, and Barile continued to play on behalf of the University. Barile eventually underwent surgery at a University facility, but the injury left him unable to work after his return to Ohio.

Barile filed suit in Ohio against the University for breach of contract. The trial court granted the University's motion to dismiss for lack of personal jurisdiction. The Ohio Court of Appeals reversed, finding sufficient minimum contacts between the University and Ohio to justify the exercise of personal jurisdiction. 441 N.E.2d at 614. The *Barile* court stressed that the University, through its agents who had come to Ohio to recruit Barile, had aggressively pursued him within the State of Ohio in an effort to induce him to play at Virginia. *Id.* The court also found that the cause of action arose out of the University's activities in Ohio, as Barile's agreement, made in Ohio, to attend and perform for the University was connected to the University's agreement to provide proper medical care. *Id.*

The court concluded that the exercise of jurisdiction by Ohio courts was fair and reasonable because the University should have foreseen that by intensively recruiting an Ohio athlete, it became subject to the lawsuits in Ohio for causes of action arising out of promises made to the athlete. *Id.* The court also determined that the burden imposed upon the University to defend the lawsuit in Ohio was slight compared to the burden imposed on Barile if he brought suit in Virginia, and that Ohio had an interest in protecting its residents, particularly those who, because of youth or lack of experience, might be susceptible to unfair practices. *Id.*

The *Barile* court's determination that, when a defendant dispatches agents to the forum state to actively recruit a resident, that constitutes contacts of a quality which justify the exercise of personal jurisdiction is consistent with the approach taken in other jurisdictions. In *Wright v. Columbia Uni-*

*versity,* 520 F.Supp. 789 (E.D.Pa.1981), an action under the Federal Rehabilitation Act, the Eastern District of Pennsylvania examined the issue of the nature of contacts pursuant to the venue provisions of 28 U.S.C. § 1391(c), which require a greater quantum of contacts than necessary to establish jurisdiction. In *Wright,* the District Court determined that active recruitment in the forum state by school personnel and alumni constituted sufficient contacts. 520 F.Supp. at 795. And, in *Jackson v. Bishop College,* 359 So.2d 704 (La.App.1978), an action for breach of a scholarship contract, the plaintiff alleged that an agent for the out-of-state school entered the forum state, negotiated with the plaintiff, and executed the scholarship agreement in the forum state. The Louisiana Court of Appeals found this to be sufficient minimum contacts. 359 So.2d at 706.

The Texas Supreme Court's decision in *Siskind v. Villa Foundation for Educ., Inc.,* 642 S.W.2d 434 (Tex.1982) is also instructive. There, the plaintiffs, who were Texas residents, enrolled their son in an Arizona school for problem students. Later, the school expelled their son and refused to refund his tuition, and the parents filed suit for breach of contract, misrepresentation, and violation of the Texas Deceptive Trade Practices Act. The court found that the school's practice of advertising in Texas telephone directories, in conjunction with its practice of mailing informational packets, applications for admission, invitations to enroll, and enrollment contracts to Texas residents were consistent with the assumption of jurisdiction by Texas courts. 642 S.W.2d at 436. Furthermore, the court concluded there was a sufficient connection between the school's solicitation of business in Texas and the plaintiffs' causes of action, noting that the allegations of misrepresentation were based on the school's advertisements, letters, and phone conversations, which were relied upon in Texas, and that there was a sufficient connection between the school's Texas contacts and the breach of contract claim, as the plaintiffs alleged that the school's representations, which were made in Texas, induced them to enter into a contract which was partially executed in Texas. *Id.* at 437.

*State of Oregon v. Superior Court (Lillard),* 24 Cal.App.4th 1550, 29 Cal.Rptr.2d 909 (Cal.App. 2 Dist.1994), although overruled in part in *Vons,* 58 Cal.Rptr.2d at 919 n. 8, is nevertheless worth noting. *State of Oregon* involved facts very similar to *Barile,* the head coach of the Oregon State University basketball team came to the plaintiff's high school in California for the purpose of recruiting him to play at OSU. The plaintiff enrolled at OSU, but remained a California resident, returning home for the summer at the end of his freshman year. After he suffered a mild stroke in California that summer, agents from OSU "re-recruited" him by assuring him that he would receive proper medical care and treatment if he returned to OSU. The plaintiff did return to OSU, where he suffered a second stroke and died. The medical care he received there formed the basis of his mother's claims of negligence in her wrongful death action.

The California Court of Appeals determined that these contacts were of a nature that was consistent with the exercise of personal jurisdiction, stating that OSU, "having undertaken recruitment activities directed at a specific California resident, could reasonably expect to be subject to liability in California for injury resulting from these activities." 29 Cal.Rptr.2d at 913. Although *State of Oregon* was overruled in *Vons* insofar as it adopted a but for test for determining whether a cause of action arises from or relates to the contacts within the forum state, the case remains instructive on the nature and quality of recruitment contacts.

Baylor relies upon *Hardnett v. Duquesne University,* 897 F.Supp. 920 (D.Md.1995), *Cassell v. Loyola University,* 294 F.Supp. 622 (E.D.Tenn.1968), and *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539 (3d Cir.1985). In *Hardnett,* a Maryland resident who was a student at Duquesne University in Pennsylvania was injured while attending a rock concert there, and filed a negligence action in Maryland against the University. In determining the nature of the University's contacts with the forum state, the court noted that the plaintiff had requested application materials from Duquesne, that Duquesne had mailed materials to the plain-

tiff at his home in Maryland, and that Duquesne had eventually mailed him a letter of acceptance there. The court determined that the· nature of these contacts were not consistent with the exercise of personal jurisdiction over Duquesne, and furthermore that the cause of action did not arise out of these contacts.

In *Cassell,* a Tennessee resident who was a student at a Florida junior college was offered a scholarship to play basketball for Loyola University. The plaintiff accepted the offer and signed a "scholarship contract" in Florida, and then forwarded the contract to Tennessee for his father's signature. When the University later refused to grant him a scholarship, he sued for breach of contract in Tennessee. In *Cassell,* none of the negotiations leading to the signing of the contract occurred in Tennessee; agents of the University communicated by mail and telephone instead of coming into the state. The District Court in Tennessee found an insufficient connection between this activity and the forum state to justify personal jurisdiction.

In *Gehling,* the plaintiff was a Pennsylvania resident who was accepted for admission by a school in the West Indies. While in attendance there, he participated in a school-sponsored road race, collapsed, and died. His parents brought a wrongful death action in Pennsylvania, asserting causes of action including negligence and breach of contract. In *Gehling,* the issue of minimum contacts is addressed in the context of both general and specific personal jurisdiction. In considering general personal jurisdiction, the court considered the school's contacts with Pennsylvania, which included advertising in the New York Times and the Wall Street Journal, enrollment of some students from Pennsylvania each year, and a "media swing" by college officials through several cities, including Philadelphia. Noting that there was no evidence that students were actually recruited during the "media swing," the court found these contacts to be insufficient to invoke general personal jurisdiction. 773 F.2d at 541–543.

The *Gehling* court considered specific personal jurisdiction in the context of the par-

ents' claim that their son and the college had entered into an implied contract which required the college to exercise reasonable care to protect him, and that the college's breach of this contract resulted in their son's death. The parents claimed that the case involved a Pennsylvania contract; however, the documents involved showed that their son applied for admission from Pennsylvania, and his application was accepted in Grenada. In addition, the college sent mail into Pennsylvania advising the prospective student of his acceptance and supplying other information concerning matriculation, and the student responded by mailing the requested tuition from Pennsylvania. The *Gehling* court found these contacts to be insufficient to support specific jurisdiction. *Id.* at 543–544.

*Tung v. American University of the Caribbean,* 353 N.W.2d 869, 870 (Iowa App.1984), also cited by Baylor, is instructive in that the Iowa court used the same five-part balancing test that this court has used since *Dillaplain.* In *Tung,* the Iowa plaintiff filed suit for breach of an employment contract by the defendant university, and the court determined there were insufficient minimum contacts to assert specific personal jurisdiction. However, *Tung* is distinguishable from the case at bar in that the defendants never sent any representatives to Iowa, and the contract itself was negotiated by the parties in Florida and signed by the defendant in the British West Indies. The defendant's only contacts with the forum state consisted of three letters and three phone calls.

In considering the· disparate results reached in these cases, certain basic patterns emerge. First, as to the nature of the defendant's contacts with the forum state, courts are more prone to find that recruitment contacts justify the assertion of specific personal jurisdiction when the recruitment process involves the physical presence of the defendant's agents in the forum state, as opposed to contact by mail or phone. *Barile, State of Oregon, Wright,* and *Jackson* asserted jurisdiction, at least in part, because of physical presence in the forum state by recruiting agents for the defendants; conversely, *Cassell* and *Tung* specifically noted that the fact that the defendant's agents did not enter the

forum state was a factor in the denial of jurisdiction.

Second, as to the relation of the forum contacts to the cause of action, courts are divided over whether recruitment or solicitation in the forum state is sufficiently related to ensuing out-of-state misconduct to support the assertion of specific personal jurisdiction in a resulting tort claim. *Hardnett* expressed a reluctance to assert jurisdiction based upon out-of-state tortious conduct when the defendant's contacts with the forum state were wholly contractual in nature. *Siskind* suggests that if the tortious conduct is a misrepresentation made or relied upon in the forum state, jurisdiction will be found. In a breach of contract action, *Hahn, Barile, Jackson,* and *Siskind* indicate that courts are more likely to find jurisdiction if negotiations, or representations, recruitment, or other solicitation by agents physically present in the forum state induce the plaintiff to enter into a contract which is at least partially executed in the forum state. Further, *Hahn* and *Siskind* have so held even if the breach occurred outside the forum state. On the other hand, *Cassell, Gehling,* and *Tung* hold that, if none of the negotiations leading to the contract are conducted inside the forum state because the defendant sent no agents there, relying instead on mailed or telephone representations to induce the contract, the forum state will not assume jurisdiction.

In the case at bar, Baylor's contacts with the forum state involve the dispatching of agents to the forum state to actively recruit a resident, and consistent with the general rule and cases cited above, such contacts are of a nature, quality and quantity which support the exercise of personal jurisdiction. Defendant Kevin Gray, an assistant coach at Baylor, made as many as seven trips into Missouri to recruit Davis; defendant Darrel Johnson, another assistant coach, made three such trips into the state. From 1989 to 1996, Baylor representatives made thirty-two trips to Missouri for the purpose of recruiting basketball players. Also, as in *Hahn,* these activities occurred within a larger effort to recruit students and student athletes.

This court has, in the past, acknowledged the significance of active solicitation by an out-of-state defendant. As we noted in *Gangwere v. Bischoff,* 935 S.W.2d 783, 785–786 (Mo.App. W.D.1996), the cases have deemed the minimum contacts to be insufficient when a Missouri plaintiff solicits or initiates contact with an out-of-state defendant, but sufficient when the defendant engages in persistent solicitation of the plaintiff, even if—unlike this case—that solicitation does not involve physical presence in Missouri, but regular phone and mail contact.

Turning to the last primary factor—the relation of the contacts to the cause of action—it is evident that Davis' claims for breach of contract and fraudulent misrepresentation are sufficiently related to the forum contacts in this case. Baylor's recruitment efforts by agents dispatched to Missouri were instrumental in the formation of an agreement—the National Letter of Intent— which Davis executed in Missouri. Davis also alleges that the fraudulent misrepresentations were made by Baylor representatives while they were in Missouri recruiting him.[1] Baylor argues that the breach of contract and fraudulent misrepresentation claims are pretextual causes of action designed and pled to ensure personal jurisdiction over the defendants in Missouri. However, in determining the issue of personal jurisdiction, a court does not consider the merits of the underlying action. *Chromalloy,* 955 S.W.2d at 3.

An analysis of the secondary factors in this analysis (i.e., the interest of the forum state and the convenience to the parties) does not change our conclusion that Missouri has personal jurisdiction over Baylor with respect to these two specific causes of action. Although the petition lists Davis as a resident of Kansas at the time the pleading was filed, he was a Missouri resident at the time

---

1. As explained below, we are only finding personal jurisdiction against Baylor with respect to that aspect of the fraud count which asserts that, while recruiting Davis in Missouri, an agent of Baylor misrepresented that the school ran an honest program. Those allegations in the fraud count which concern the cheating scandal in Waco, Texas do not form a basis for the assertion of personal jurisdiction against Baylor.

of the events giving rise to those two claims. Also, the inconvenience to this defendant does not defeat personal jurisdiction under these circumstances.

Thus, as to Baylor, jurisdiction is proper for Count XI, which sets out a claim for breach of contract, and for Count V insofar as it concerns fraudulent misrepresentations allegedly made while recruiting him in Missouri. Jurisdiction is also proper for Counts VI through X insofar as those counts are explicitly based upon Count V's claims of fraudulent misrepresentations made in Missouri. Jurisdiction is not proper for Count I through IV, and the aspects of Counts V through X which do not concern the alleged misrepresentations in Missouri, as they are not substantially related to recruitment contacts with the forum state, and thus do not justify the assertion of personal jurisdiction over Baylor.

Having resolved the issue of personal jurisdiction as to Baylor, we must address the question of whether Missouri can exercise personal jurisdiction over any of the remaining defendants. The individual defendants, and their association with Baylor at the time of the events giving rise to this litigation, are as follows: Darrel Johnson was the head coach of the men's basketball program; Gary Thomas, Kevin Gray, and Troy Drummond were assistant coaches. Vincent Metcalf was also a member of Baylor's coaching staff, and Grant Teaff was Baylor's athletic director. Herbert Reynolds and James Netherton were president and vice president of Baylor, respectively.

Davis voluntarily dismissed Reynolds, Netherton, and Teaff from the litigation. Johnson did not raise the defense of a lack of personal jurisdiction in any motion or responsive pleading, and has therefore waived the issue. Rule 55.27(g)(1). Of the remaining defendants, neither Metcalf nor Drummond were involved in the recruitment of Davis in Missouri, and the only allegations against them concern their involvement in the cheating scandal in Waco, Texas. Consequently, they are not subject to personal jurisdiction in Missouri.

The other two individual defendants, Thomas and Gray, were involved with Baylor's recruiting efforts in Missouri. However, none of the causes of action asserted by Davis constitute a basis for the assertion of personal jurisdiction over them personally. As discussed above, none of the counts which are based upon the cheating scandal in Waco, Texas have a sufficient connection to Missouri to justify personal jurisdiction. That leaves Davis' claims for breach of contract and fraudulent misrepresentation. As to the former, Davis' petition fails to state a cause of action against these particular defendants for breach of contract, and therefore that cause of action does not support the assertion of personal jurisdiction over them.

As to the latter, the petition merely states that "the defendants" committed the tort of fraudulent misrepresentation by asserting that Baylor ran an honest program. The record on appeal shows that, in his deposition testimony, Davis identified Johnson, and Johnson alone, as having made this specific assertion.[2] A party seeking to invoke long-arm jurisdiction based on a defendant having committed a tort within Missouri must make a prima facie showing of the validity of his tort claim. *Stavrides v. Zerjav*, 848 S.W.2d 523, 527 (Mo.App. E.D.1993). Davis has failed to make such a showing with respect to his claim of fraudulent misrepresentation against Thomas and Gray.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with instructions to dismiss all counts which are jurisdictionally improper as to Baylor University (i.e., Counts I through IV, and the aspects of Counts V through X which do not concern the alleged misrepresentations in Missouri), and to dismiss all counts against the individual defendants, with the exception of Darrel Johnson, who waived the issue of personal jurisdiction, and

**2.** In one of his motions before the trial court, Davis claims that he attributed such a misrepresentation to Gray in his deposition. However, that page of the deposition is not included in the record on appeal. It is the burden of the party appealing to file a record supporting its claim of error. *French v. Missouri Highway and Transp. Com'n*, 908 S.W.2d 146, 151 n. 2 (Mo.App. W.D. 1995).

for further proceedings consistent with this opinion.

All concur.