STATE of Missouri, ex rel. Jeremiah
W. (Jay) NIXON, Attorney
General, Respondent,

v.

BEER NUTS, LTD., d/b/a Hog's Head
Beer Cellars, Appellant.

No. ED 76192.

Missouri Court of Appeals,
Eastern District,
Division Seven.

March 14, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 10, 2000.

Case Transferred to Supreme Court
July 27, 2000.

Case Retransferred to Court of
Appeals Nov. 14, 2000.

Original Opinion Reinstated
Nov. 20, 2000.

Jean Paul Bradshaw II, Robert L. Rodenbush, John L. Kellogg, Lathrop & Gage L.C., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, J. Dale Youngs, Asst. Atty. Gen., Kansas City, for respondent.

RICHARD B. TEITELMAN, Judge.

Beer Nuts, Ltd., d/b/a Hog's Head Beer Cellars ("Beer Nuts") appeals a judgment entered in favor of Jeremiah W. (Jay) Nixon, Attorney General ("Attorney General" or the "State") finding that Beer Nuts' sale of memberships in its "beer-of-the-month club" violates the public policy of the Missouri Merchandising Practices Act, Section 407.010 RSMo, *et seq.* The court imposed a $1,000 fine and entered a permanent injunction against Beer Nuts to prevent it from selling club memberships to Missouri residents.

This case raises the question of whether otherwise legitimate interstate selling practices, which have become increasingly common due to mail-order and cyberspace merchandising, are subject to the same strict regulations that apply to sales within the State of Missouri when the product being sold consists of alcoholic beverages. For the most part, the parties do not dispute the basic facts.

*Factual and Procedural Background*

*The Company's Operations*

Beer Nuts does business under the name "Hog's Head Beer Cellars," and is engaged in the business of advertising, promoting, offering for sale, selling and subsequently delivering "microbrewery" beers directly to consumers through memberships in its "beer-of-the-month" club and through other offerings. Beer Nuts is one of the largest such businesses in the country. Beer Nuts is a North Carolina corporation and is licensed in North Carolina as a malt beverage dealer. It has no physical place of business in Missouri, has no agent in Missouri and is not registered to do business in Missouri. Neither is Beer Nuts licensed in Missouri as a retailer, wholesaler, manufacturer or solicitor of alcoholic beverages. The microbrewery beers that Beer Nuts sells constitute "intoxicating liquor" as defined in Section 311.020.[1]

Beer Nuts conducts its business by advertising to ultimate consumers through the use of various media, such as radio, television and national-circulation magazines. It also uses a website on the Internet. These advertisements regularly reach consumers in Missouri, although none of Beer Nuts' advertisements are aimed exclusively at Missouri consumers. More than 1.5 million Missouri consumers have access to the Internet, including a substantial number under the age of 21 years. Once Beer Nuts places its website on the Internet, there is no way that it can prevent residents of Missouri who have access to the Internet from visiting the site and reading the information available on the site. Beer Nuts' site on the web can be found by Missouri consumers with Internet access by simply typing its web "address" or by using a search engine.

In the summer and fall of 1997, Beer Nuts' website fell in the middle range of websites accessible on the web in terms of its sophistication and interactivity. Through the website, Missouri consumers could: interact with Beer Nuts and see its advertising; view information about the

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

services offered by Beer Nuts and shipping information; view a listing of the microbrew beers offered by Beer Nuts; review articles about different beers offered by Beer Nuts and the breweries whose beer it sold; have themselves placed on a mailing list to receive catalogs and other information; order "Hog's Head" t-shirts, hats, and sweatshirts; send and receive electronic mail to and from Beer Nuts; and learn Beer Nuts' toll free number, which they could then call for more information about Beer Nuts' products and services. Prior to the filing of this lawsuit, consumers could also purchase memberships in Beer Nuts' beer club directly through its website using an online order form, and could pay for those orders by entering a valid credit card number.

As of December 1997, 48 Missouri residents were current beer-of-the-month club members through Beer Nuts and 282 Missouri residents were prior club members. No evidence was presented at trial that Beer Nuts had information that any of its customers were minors at the time they purchased beer through one of the club memberships.

### Beer–of–the–Month Club

In the summer and fall of 1997, Beer Nuts' beer club operated as follows: Consumers could purchase memberships in three varieties of clubs, each offering different types of microbrewed beers as well as root beers, ginger ales and birch beers. Consumers could choose the length of time they wished to be members of the club, and had the option of having their membership renewed automatically on a month-to-month basis, or joining the club for three, six or twelve month blocks of time. In July of 1997, Beer Nuts' membership dues, including tax, were $26.95 per month.

Consumers could also decide the month and year they wished to begin receiving shipments of beer, and could pay for the membership by providing their credit card information. Prior to the filing of this lawsuit, consumers could purchase membership in Beer Nuts' beer club directly through its website using an online order form, and could pay for those orders by entering a valid credit card number. After the filing of the lawsuit, Beer Nuts stopped taking such orders through its website, and began only taking orders by phone, fax or mail. Further, Beer Nuts placed a notice on its website indicating that its service is not available in Missouri.

After the filing of this action, Beer Nuts placed some additional language on its website that indicated that all sales occurred and title of the beer would pass to the buyer in North Carolina. The website language also provided that consumers would be representing that they were at least twenty-one years of age by placing an order with Beer Nuts. This language had previously been contained on the promotional materials that Beer Nuts mailed to consumers and was read to consumers when they called to place orders through the 1–800 number.

Prior to the filing of this action, neither Beer Nuts' website nor its written orders or long distance order takers regularly warned Missouri consumers that they could not order beer unless they were at least twenty-one years of age, nor did Beer Nuts require proof of age as part of the ordering process. After this action was filed, Beer Nuts modified its website and phone order practices to provide only that consumers had to represent that they were twenty-one years of age or older. Although the website purportedly required consumers to fax a copy of their driver's license to Beer Nuts as proof of age, it was undisputed that this was not typically done.

### The Investigation

At various times beginning in early June, 1997, an investigator for the Missouri Attorney General's Office accessed Beer Nuts' website from his office in St.

Louis. During the course of his investigation from that location, he accessed all portions of the website, reviewed all of the information regarding Beer Nuts' products and services, corresponded with Beer Nuts via electronic mail and received electronic mail from Beer Nuts, was added to Beer Nuts' mailing list and received a brochure from Beer Nuts containing further information.

He also called the 1–800 number advertised by Beer Nuts and spoke to a customer service representative who told him that Beer Nuts shipped out "probably 200 cases every day." She also told him that his membership fee would include Missouri sales tax, stating, "We have a few states we can't ship to, because we don't have a way of paying them the sales tax … But, Missouri we can. We cover everything." She further advised him that Beer Nuts had not "had any trouble at all" with Missouri. Beer Nuts admitted that the customer service representative represented that the products and services offered directly to Missouri consumers by Beer Nuts were being legally sold and transported into the State of Missouri. In response to the investigator's questions about shipping, the representative stated that Beer Nuts shipped "every day" and that it shipped via UPS.

On June 12, 1997, an investigator with the Missouri Division of Liquor Control accessed Beer Nuts' website and filled out the online order form and purchased a monthly membership in the beer club. At no time did Beer Nuts require the investigator to provide any representation regarding her age. The investigator subsequently received her order via UPS, and it contained two six-packs of unregistered beer that had not been inspected by Missouri authorities.

On June 13, 1997, an 18–year–old intern working for the Missouri Attorney General's office accessed Beer Nuts' website and purchased a membership in the club using a decoy name and credit card, and a St. Louis address. She was not required to

verify or represent that she was at least 21 years of age. A few days later, two six-packs of unregistered, untested beer were left at the door by UPS at the St. Louis address the intern designated.

### The Litigation

On the basis of this investigation and the belief that Beer Nuts had engaged in similar transactions with other Missouri consumers, Attorney General Jeremiah W. (Jay) Nixon filed this action on July 24, 1997, alleging that Beer Nuts' practices violated the Missouri Merchandising Practices Act and Missouri's Liquor Control Law by inviting Missouri residents to purchase microbrewery beer through the Internet, as well as through mail orders and 1–800 long-distance orders. The petition asserted that the court had long-arm jurisdiction over Beer Nuts, and alleged that the company's operations in selling over the Internet and through other means constituted "unfair practices" which violated the public policy expressed in Missouri's statutes regulating the sale of and other operations involving alcoholic beverages in Missouri.

On November 1, 1997, the parties entered into a written agreement under the terms of which Beer Nuts agreed to voluntarily stop selling beer to Missouri residents and the Attorney General agreed in return to not pursue his request for a temporary restraining order.

On December 5, 1997, the Attorney General filed a first amended petition reasserting the original allegations and cause of action in Count I and adding a second count, which claimed that Beer Nuts had breached key provisions of the parties' November 1, 1997 agreement.

After a short trial before the Honorable Philip D. Heagney on December 16, 1997, and consideration of extensive post-trial submissions by both parties, the trial court entered a thorough and well-written judgment in favor of the State of Missouri on Count I, its claim that Beer Nuts' actions

constituted unfair trade practices under Section 407.020. The court entered a permanent injunction against Beer Nuts enjoining it from selling beer club memberships to Missouri consumers and imposed a civil penalty of $1,000 but awarded no investigation costs pursuant to Section 407.130.[2] The court entered judgment in favor of Beer Nuts on Count II, finding that Beer Nuts had not violated the terms of the November agreement.[3] This appeal follows.

## Discussion

On appeal, Beer Nuts argues that the trial court erred in (1) concluding that it had personal jurisdiction over Beer Nuts, because neither the requirements of the Missouri long-arm statute nor the requirements of due process have been met; (2) concluding that Beer Nuts' selling of memberships to Missouri residents in its beer-of-the-month club violates Section 407.020.1 by misrepresenting or failing to advise purchasers that the sale violates Missouri liquor laws, because the sale of memberships occurs in North Carolina; and (3) concluding that the selling of memberships to Missouri residents is an "unfair practice" that violates Section 407.020 because this determination is outside the scope of that statute.

## I

■ Beer Nuts first argues that the trial court erred in concluding that it had personal jurisdiction over Beer Nuts because neither the requirements of the Missouri long arm statute nor the requirements of due process have been met. Beer Nuts contends that its sale of beer club memberships in North Carolina to Missouri residents via advertising on the Internet and the receipt of telephone calls does not constitute transacting business or making a contract in Missouri and Beer Nuts does not have the requisite "minimum contacts" with Missouri to make it subject to personal jurisdiction.[4]

■ The trial court had personal jurisdiction over Beer Nuts pursuant to Missouri's long-arm jurisdiction statute. "[L]ong-arm statutes, as the name implies, are intended to expand the reach of the law of the state to authorize jurisdiction over foreign corporations that are not necessarily authorized to do business in the state but whose activities justify personal jurisdiction." *State ex rel. K–Mart Corp. v. Holliger*, 986 S.W.2d 165, 168 (Mo. banc 1999).

■ Missouri's long-arm statute was designed to allow the exercise of jurisdiction over out-of-state defendants to the extent permissible under the due process clause. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984). Section 506.500 provides, in pertinent part:

2. The trial court found that it would not be appropriate to assess the Attorney General's costs of investigation against Beer Nuts. It reasoned that Beer Nuts "took reasonably prompt action to address the Attorney General's concerns" as soon as the Attorney General filed its suit, that there was no evidence of any actual harm occurring to any Missouri consumers as a result of Beer Nuts' operation, and that no Missouri consumers had filed complaints with the Attorney General concerning Beer Nuts.

3. The court found that Beer Nuts took reasonable steps to bring itself within full compliance with its responsibilities under the terms of the agreement in a reasonable time and that any delay was due to a technical problem on its website. Therefore, its conduct did not constitute a substantial breach of the agreement.

4. Beer Nuts does not challenge the trial court's finding of subject-matter jurisdiction in this case. We note that the trial court correctly found that it had subject-matter jurisdiction over Count I against Beer Nuts pursuant to Section 407.100, which allows the Attorney General to seek injunctive relief, restitution and penalties in state court for violations of Section 407.020. The trial court had subject-matter jurisdiction over Count II on the basis of the terms of the parties' November 1, 1997, agreement, Section 5 of which provides that "this agreement shall be deemed entered into within the State of Missouri."

1.  Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

. . .

3.  Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based on this section.

■ Thus, pursuant to Section 506.500, a corporation subjects itself to legal action in the State of Missouri if it transacts any business within the State or enters into a contract within the State.[5] For the purposes of the statute, the "transaction of any business" is construed broadly, and may consist of a single transaction, if the transaction is that upon which the plaintiff is suing. *State ex rel. Metal Serv. Ctr.*, 677 S.W.2d at 327.[6]

■ To be subject to the long-arm jurisdiction, a corporation need not be qualified to do business as a foreign corporation. *State ex rel. Newport v. Wiesman,* 627 S.W.2d 874 (Mo. banc 1982). Physical presence is not a determinative factor in commercial cases in establishing sufficient minimum contacts between the defendant and the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528, 543 (1985).

## Minimum Contacts

■ For personal jurisdiction to exist, due process requires a defendant to have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The "minimum contacts" test is not susceptible of mechanical application; rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Marler v. Hiebert,* 943 S.W.2d 853, 856 (Mo.App. W.D.1997), citing *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978) (further citations omitted).

---

5.  Under the terms of the November 1, 1997 written agreement, the parties authorized the Circuit Court of St. Louis City to hear any actions for breach of its provisions. In its first amended petition, the State added Count II, which alleged a breach of this agreement. Pursuant to Section 506.500.1(2), then, the trial court properly had jurisdiction over Beer Nuts in this case. We will analyze Beer Nuts' claim of lack of jurisdiction without considering jurisdiction over Count II, which was decided in Beer Nuts' favor and is not being appealed, because jurisdiction over Count I was a threshold issue before the trial court at the time the original petition was filed in July of 1997.

6.  Minimum contacts may give rise to either "general" or "specific" jurisdiction. *Davis v. Baylor University,* 976 S.W.2d 5, 8 (Mo.App. W.D.1998) (citations omitted). When a state exercises jurisdiction over a nonresident defendant in a suit "arising out of or related to" the defendant's contacts with the forum, the state is exercising specific jurisdiction over the defendant. *Id.* However, when a state exercises personal jurisdiction over a nonresident defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is exercising general jurisdiction over the defendant. *Id.* General personal jurisdiction requires that a nonresident defendant's contacts with the forum state be "substantial and continuous." *Id.* Because more substantial contacts must be shown to establish general personal jurisdiction, courts rarely find that an out-of-state defendant's contacts are sufficient to invoke such jurisdiction, so the great majority of cases focus on claims of specific jurisdiction. *Id.* In the case at bar, specific jurisdiction is at issue.

"In determining the existence of sufficient minimum contacts, the following factors are to be considered: (1) the nature, quality, and quantity of the contacts with Missouri; (2) the relationship of the cause of action to those contacts; (3) the interest of Missouri in providing a forum for its residents; and (4) the convenience and inconvenience to the parties." *Farris v. Boyke,* 936 S.W.2d 197, 201 (Mo.App. S.D. 1996), citing *Laney v. Nigro,* 905 S.W.2d 902, 904–05 (Mo.App. S.D.1995). In reviewing minimum contacts to satisfy the due process requirements, a court focuses on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977).

In the case at bar, the trial court found that Beer Nuts had regularly solicited customers in and from Missouri and this activity constitutes the transaction of business within the State. Beer Nuts admittedly delivered thousands of bottles of beer into the State pursuant to commercial relationships that Beer Nuts maintained with hundreds of Missouri residents. Beer Nuts, therefore, "purposely availed itself of the privilege of conducting activities within the forum state." *Elaine K. v. Augusta Hotel Assoc.,* 850 S.W.2d 376, 378 (Mo.App. E.D.1993).

Moreover, the cause of action in the case at bar is directly related to Beer Nuts' contacts with Missouri residents. It arises from the sale to Missouri residents of beer that had not been tested or approved by Missouri authorities. It is well within Missouri's interest to provide a forum for the Attorney General to bring allegations of a Merchandising Practices Act violation.

Though Beer Nuts argues that the sales of memberships occurred in the State of North Carolina, this factor is not determi-native. The trial court found that Beer Nuts had amended its website after the Attorney General filed this action to include language regarding North Carolina as the place of sale.[7] Prior to this time, Missouri residents, including two working for the State of Missouri on this investigation, were able to purchase beer on Beer Nuts' website using an online order form without ever seeing the representation that title to the beer would pass to the consumer in North Carolina. Until the website was amended, information regarding place of sale was only given on the phone and through Beer Nuts' promotional materials. Therefore, regardless of the parties alleged ability under Uniform Commercial Code ("UCC") Chapter 400 *et seq.,* to contract where the sale of the beer would take place, the trial court had before it substantial evidence that no such contract regarding place of sale existed for those consumers purchasing beer club memberships online.

### Due Process

After it has been determined the defendant has established sufficient minimum contacts, other factors must be considered to determine whether jurisdiction over the non-resident defendant would comply with "traditional notions of fair play and substantial justice." *Quelle Quiche, Ltd. v. Roland Glass Foods, Inc.,* 926 S.W.2d 211, 214 (Mo.App. E.D.1996) (citations omitted). The trial court must additionally consider: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in

---

**7.** The information added provided, in pertinent part:

"All alcoholic beverage products purchased from Hog's Head Beer Cellars are sold in the State of North Carolina and title passes to the buyer in North Carolina. Hog's Head makes no representation to the legal rights of anyone to ship or import alcoholic beverages into any state outside of North Carolina. The buyer is solely responsible for the shipment of alcoholic beverage products. By placing an order with Hog's Head, you authorize Hog's Head to act on your behalf to engage a common carrier as a delivery service for your order."

furthering fundamental substantive social policies. *Id.*

When considering these factors, we find that the interest of the State of Missouri in regulating the sale and delivery of alcoholic beverages within its borders outweighs the burden that Beer Nuts bears in appearing as a party defendant in Missouri. The record reveals that the parties jointly stipulated to most of the facts presented and the trial was concluded in one day. Only one of the four witnesses called to testify, Beer Nuts' President, was from outside the State of Missouri.

The regulation of alcoholic beverages is under state control pursuant to the Twenty-first Amendment of the United States Constitution. It is therefore well within the interest of the interstate judicial system and the shared interests of all states for Missouri to have jurisdiction over persons seeking to sell alcoholic beverages to Missouri consumers and ship the beverages directly into the State.

We find that Beer Nuts had minimum contacts with Missouri and its due process rights were not violated by the trial court exercising personal jurisdiction over it in this case. Point denied.

### II

Beer Nuts next argues that the trial court erred in concluding that the sale of memberships in Beer Nuts' beer-of-the-month club to Missouri residents violates Section 407.020.1 by misrepresenting or failing to advise purchasers that the sale violates Missouri liquor laws. Beer Nuts contends that this is erroneous because under the UCC and Missouri case law, the sale of the membership occurs in North Carolina, in that the parties enter into an agreement concerning the place of sale.

Beer Nuts is incorrect in its assertion. As previously discussed, the website as it existed prior to the filing of this suit provided no language regarding place of sale. Therefore, customers ordering memberships on-line did not enter into any such agreement. Additionally, Beer Nuts is incorrect with regard to its other customers because the sales in question involve intoxicating liquor.

The Twenty-first Amendment to the United States Constitution specifically reserves to each state the right to regulate the delivery and use of intoxicating liquor within its borders. In *Kehr v. Garrett*, 512 S.W.2d 186 (Mo.App.1974), this Court explained the status of the liquor business in Missouri:

We start with the proposition that the liquor business stands on a different plane than other commercial operations. It is placed under the ban of the law and is differentiated from all other occupations, and no person has the natural or inherent right to engage therein. Those who engage in the business of liquor have no legal rights save those expressly granted by license and the statute. The state may impose such conditions, burdens and regulations as it may deem wise and proper. In the eyes of the law the liquor business stands on a different plane from other pursuits and is separated or removed from the natural rights, privileges and immunities of the ordinary citizen. (citations omitted).

*Id.* at 189.

In Missouri, "[a]ll phases of the liquor business are subject to strict regulation." *Spradling v. Supervisor of Liquor Control,* 824 S.W.2d 906, 908 (Mo. banc 1992). Chapter 311 sets out lengthy and detailed requirements which must be followed in order to manufacture or sell beer and other alcoholic beverages in the State. Section 311.310 makes it a misdemeanor to sell intoxicating liquor to a person under the age of 21 years. Missouri has a long-standing public policy prohibiting the sale of alcohol to minors. *May Department Stores v. Supervisor of Liquor Control,* 530 S.W.2d 460, 468 (Mo.App. 1975). When the legislature decides to loosen the otherwise strict regulation of the manufacture or sale of alcoholic bever-

ages in Missouri, it does so by specifically amending Chapter 311.[8]

Beer Nuts argues that it has not violated the provisions of Chapter 311 because Missouri's Liquor Control law does not apply to it. It contends that it is a licensed retail malt beverage dealer in North Carolina, that it complies with all the North Carolina liquor control laws that apply to it, and that it only sells beer in North Carolina. Beer Nuts relies on the fact that, by written agreement with each consumer, its sales occur in North Carolina, the consumer takes title to the beer in North Carolina, and Beer Nuts does not ship the beer to Missouri or anywhere else. Instead, Beer Nuts acts as the consumer's agent and arranges for shipment of the beer through an independent delivery company like United Parcel Services.

Both parties agree that Chapter 311 provides no definition of the term "sale" or "sell." Beer Nuts argues that the court must use the UCC and case law to find the appropriate definition of what constitutes a "sale." The Attorney General argues, conversely, that Chapter 407.010(6) provides a definition of "sale" and that the court should use this broad definition to interpret the meaning of these terms in the context of Chapter 311.

Beer Nuts' argument might be convincing on this issue if the product under consideration were something other than alcoholic beverages. However, because this case involves the sale of beer, the definition of "sale" as including "offer for sale" or "attempt to sell" found in Section 407.010(6) expresses the range of meaning that properly fits within the Liquor Control Law's public policy purpose of strictly regulating the sale of intoxicating liquor, including beer, in the State of Missouri.

Consequently, by advertising its products for direct sale to Missouri consumers and by selling microbrewery beer directly to Missouri consumers, Beer Nuts is subject to the provisions of Missouri's Liquor Control Law. Point denied.

## III

Finally, Beer Nuts argues that the trial court erred in concluding that the selling of memberships by Beer Nuts in its beer-of-the-month club to Missouri residents is an "unfair practice" and therefore violates Section 407.020 because this determination is outside the scope of that statute. Beer Nuts argues that Section 407.020 makes certain methods of selling merchandise illegal, but does not make the actual sale illegal.

The purpose of Missouri's Merchandising Practices Act is "to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo.App. 1973). By providing a statutory cause of action, the Act eliminates the need for the Attorney General to prove intent to defraud or reliance in order for the court to find that a defendant has engaged in unlawful practices. *State ex rel. Webster v. Areaco Investment Co.,* 756 S.W.2d 633, 635–36 (Mo.App.1988); *State ex rel. Ashcroft v. Marketing Unlimited of America, Inc.,* 613 S.W.2d 440, 445 (Mo.App.1981). Under the Act, the only prerequisite to the issuance of an injunction is the court's finding that the defendant has engaged in, is engaging in or is about to engage in an unlawful practice as defined by the Act. *State ex rel. Webster v. Milbourn,* 759 S.W.2d 862, 864 (Mo.App.1988). Once the court finds that a violation of the Act has

---

8. For example, Section 311.195 authorizes businesses with a "microbrewery" license both to manufacture beer and to sell it at retail, contrary to the long-standing three-tier arrangement of liquor production and sales in Missouri. Section 311.462 allows shipment of up to two cases of wine per year to any adult resident of Missouri without delivery of

the resulting shipment constituting a sale in Missouri. It is notable that Section 311.462.2 requires use of labels for the shipments that specifically prohibit delivery to a person under the age of 21 years, and that Section 311.462.3 provides that "[n]o shipper located outside this state may advertise such interstate reciprocal wine shipments in this state."

occurred or is about to occur, irreparable harm and harm to the public are presumed. *Id.* at 864. In the case at bar, we must determine whether Beer Nuts has violated the provisions of Chapter 311 in such a way that it has committed unlawful practices through misrepresentations, unfair practices, concealments or otherwise in violation of Section 407.020.1.

In Missouri, the Division of Liquor Control is the state agency charged with enforcing Missouri's liquor laws and regulating the sale of alcoholic beverages, primarily through a process of granting and renewing licenses. See Section 311.660. A primary purpose of Missouri's licensing requirements for those who sell alcoholic beverages is to provide the Division with a concrete method for inspecting, testing and approving beers before they are offered for sale in Missouri.[9] These activities are designed to protect Missouri consumers from unsafe alcoholic beverages. The Division also spends a substantial amount of time and effort in deterring the sale of alcoholic beverages to persons under the age of 21 years. See, *e.g.,* Section 311.310; Section 311.320; and *State v. Ohmes,* 675 S.W.2d 681, 685 (Mo.App. 1984).

Beer Nuts admits that it is not licensed to sell beer in Missouri, that the beer it sells does not come to rest in a licensed Missouri wholesaler's warehouse before being delivered to a licensed retailer who sells it to Missouri consumers, and that the beer has not been inspected, tested or approved by the Missouri Division of Liquor Control. Beer Nuts also admits that, in June of 1997, it sold a club membership to an intern in the Attorney General's St. Louis Office who was under the age of 21 years and, on the basis of this member-

ship, arranged for beer to be delivered to Missouri. The evidence in this case shows that Beer Nuts took no precautions to prevent sales of its beers to minors for a period of time prior to the Attorney General filing this lawsuit. Though Beer Nuts adopted some precautions after the instigation of this litigation, these precautions would not meet all of the requirements that the Division places on licensed retailers to discourage and reduce sales of alcoholic beverages to persons under the age of 21 years. By selling alcoholic beverages without statutory safeguards, Beer Nuts' operations present a risk of substantial injury to Missouri consumers.

Chapter 311, along with the case law interpreting its provisions and the history of Missouri state control of the intoxicating liquor industry, expresses a clear public policy of strict regulation, especially with regard to protection of consumers from unsafe beverages and protection of persons under the age of 21 years from all beer and other intoxicating liquors. Beer Nuts advertises its beer-of-the-month club program in Missouri, solicits Missouri consumers to join the club program, sells memberships in the club program to Missouri customers and ships beer to Missouri residents under the terms of the club program memberships without satisfactorily requiring proof of age. Therefore, it has violated Chapter 311. We hold that in not revealing any of these violations to its Missouri customers, Beer Nuts conduct constitutes misrepresentations or concealments or omissions of material facts in connection with the sale or advertisement of merchandise in trade or commerce that are unlawful practices under the public policy of Section 407.020.1.

---

**9.** For example, Section 311.490 prescribes the ingredients of beer; Section 311.500 provides for the inspection of breweries in Missouri by the supervisor of liquor control or his agents; and 311.510 provides that the supervisor of liquor control must ensure that all beer, or other intoxicating malt liquors, brewed, manufactured or sold in Missouri is inspected and found to contain only the pre-

scribed ingredients found in Section 311.490. See also, Section 311.340 (prohibiting the mixing of liquor with "any drug or form of methyl alcohol or impure form of alcohol"); Section 311.360 (prohibiting the misrepresentation of a brand of liquor); and Section 311.410 (prohibiting the transport of intoxicating liquor that has not been lawfully manufactured in, into or through Missouri).

 

The judgment of the trial court is affirmed.

Chief Judge MARY RHODES RUSSELL and Judge WILLIAM H. CRANDALL, Jr., concur.