**Carol EDMONDS, Appellant,**

v.

**Barry HOUGH, et al., Respondents.**

**No. ED 94897.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 19, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 24, 2011.

Application for Transfer
Denied Aug. 30, 2011.

Alicia Campbell, St. Louis, MO, for appellant.

Robert M. Susman, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Carol Edmonds appeals the trial court's summary judgment in favor of Barry Hough and Mary Atkins (d/b/a Home Appraisers of Greater St. Louis) on Appellant's multi-defendant petition alleging numerous counts relating to mortgage fraud. We reverse and remand.

## Background

Viewing the record in the light most favorable to Appellant, the summary judgment facts are as follows. Appellant lost her home through foreclosure and brought this action against Respondents and other individuals and entities involved in the sale and mortgage transactions.[1] Appellant is a single mother of three who earned $10,900 in 2005 providing in-home child care services. Around March 3 or 4, 2006, Appellant received an unsolicited tele-

---

1. Home & Mortgage Resources, L.L.C. d/b/a Trio Mortgage and its agent Stacy Ware, seller Mark Ware (Stacy's husband), Unique Realty LLC (owned by Mark and Stacy), UM Acquisitions LLC, UCM Servicing Co. LLC, Litton Loan Servicing LP, and United Mortgage LLC.

phone call indicating that she qualified for a home loan. Appellant expressed interest and was later contacted by Stacy Ware representing Unique Realty, a company owned by Stacy and her husband, Mark. Stacy showed Appellant several homes listed by Unique Realty. On March 14, Appellant entered into a contract to purchase a house owned by Mark for $115,000. Stacy served as the mortgage loan officer.[2] The property was in poor condition, and Mark promised to complete numerous substantial repairs—a "total rehab"—prior to closing. Mark also indicated that the existing kitchen appliances would stay in the house.

Respondents, who occupied office space across from Stacy's office, provided an appraisal dated April 20. The appraisal, for which Appellant paid $275, stated the value of the house as $115,000. The record indicates that a HUD warning was issued to the lender (Own-it Mortgage Solutions, now defunct) because the appraisal was suspiciously high. Mark had purchased the house March 2 for $67,294. Market data for the neighborhood indicated an average of $48,930 and a high of $72,057. Appellant's expert appraiser would later testify that he would have valued the house at $40,000. In addition, Respondents' appraisal indicated that "the subject has just completed renovation," "no physical deferred maintenance or functional obsolescence was noted," and there were no physical deficiencies affecting livability or structural soundness. However, Appellant's expert noted several defects, among them: rotted sub-floor and water-damaged joists visible beneath the kitchen flooring, no trim around insulated windows, leaks in the porch ceiling, plaster in poor condition, the plumbing stack rusted and in poor condition, basement wiring in need of repair, a hole in the bathroom floor revealing toilet plumbing, a hole in a wall, exterior fascia needing repair, the kitchen counter not secured, a second-floor bathroom not usable because plumbing wasn't connected, missing towel rack in bathroom, bathtub finish peeling off, and all but five windows in need of repair. Respondents' appraisal indicated livable space of 1780 square feet while Appellant's expert calculated 1664 square feet. Appellant's expert opined that Respondents' appraisal was "fictitious."

Appellant visited the property several times in early April and observed no improvements. In addition, Appellant learned from Stacy that the monthly mortgage payments would be $850, which was greater than she could afford. Appellant made several attempts to "back out" of the sale. Mark lowered the price to $110,000, assured Appellant that the repairs would be made, and offered to pay Appellant's first three mortgage payments. Stacy recalculated the figures to reduce the monthly payments to $693. Stacy told Appellant that she "bent corners" and "called in favors" to help Appellant obtain financing. Stacy convinced Appellant that she was bound by the sale contract and obligated to go through with the closing. Appellant signed the closing documents April 26. Two loans were involved. The first was an adjustable rate balloon note for $82,500 with an initial interest rate of 8%, a ceiling of 14%, and monthly payments of $573.63. At the end of 30 years, Appellant would still owe as much as $60,000. The second loan was a fixed-rate balloon note for $27,500 at 12% and monthly payments of $277.34. At the end of 30 years, Appellant would owe approximately $20,000. Appellant qualified for better rates, but Stacy received a special premium for selling the foregoing products.

---

**2.** The record indicates that Stacy was not licensed as an agent or broker.

Appellant began moving into the property the day after the closing. Other than minor cosmetic improvements, none of the promised repairs had been undertaken, and the kitchen appliances were gone. Mark also stopped payment on the check he had issued to Appellant for the first three months. Appellant's attempts to contact the Wares were unsuccessful until she disabled her outgoing caller identification, at which time they answered but then hung up on her. Appellant contacted her homeowner's insurance carrier about coverage for the repairs that Mark failed to complete but that were essential to the basic livability of the house (as described by Appellant's expert above). After an agent visited the house for a quote, the carrier revoked the policy due to the poor condition of the property.[3]

Appellant obtained legal counsel and notified the loan servicer (also a defendant) that she would withhold payment on the basis of fraud. The servicer conducted no investigation and eventually initiated foreclosure proceedings. Appellant obtained a temporary restraining order in 2008 but could not post the $5000 bond (she filed for bankruptcy in 2007), so the foreclosure advanced and Appellant was evicted in September 2009. Appellant sued all parties involved in the transaction alleging, as applicable to each: fraud, negligent misrepresentation, violations of the Merchandising Practices Act (MPA), breach of fiduciary duty, negligence, and conspiracy.

Appellant dismissed defendants United Mortgage and UM Acquisition and settled with Home & Mortgage Resources (d/b/a Trio Mortgage). The remaining defendants moved for summary judgment, essentially arguing that Appellant's losses were caused by her own ignorance. The trial court denied the motions of all defendants except Respondents here—the appraisers.[4] In granting summary judgment in favor of Respondents, the court reasoned that Appellant did not rely on the appraisal in her decision to close on the loan, and Respondents had nothing to do with the transaction other than appraising the property, so Appellant could not show that Respondents caused her damages. Additionally, the court found no evidence, beyond mere speculation, that Respondents conspired with the other defendants. Appellant contends that the trial court erred in that: reliance is not a required element under the MPA (point I) and material facts are in dispute regarding causation (points I–II) and conspiracy (point III).

## Standard of Review

The purpose of summary judgment is to resolve cases in which there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *Grattan v. Union Elec. Co.*, 151 S.W.3d 59, 61 (Mo. banc 2004). Appellate review of summary judgment is *de novo*, viewing the record in the light most favorable to the party against whom judgment was entered and granting that party the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A genuine issue

---

**3.** At oral argument, Appellant's counsel reported that the house was ultimately condemned by the City of St. Louis.

**4.** The case proceeded to trial against Unique Realty, Mark and Stacy Ware, and Litton Loan Servicing. Appellant and Litton settled during jury deliberations. The jury rendered a verdict in Appellant's favor against Mark Ware for compensatory damages of $1,929.26 for a violation of the MPA. On Appellant's claims against Unique Realty and Stacy Ware, the jury found in favor of the defendants.

exists where the evidence suggests two plausible but contradictory accounts of the essential facts. *Id.* at 382. A genuine issue is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.*

### Discussion

*Merchandising Practices Act*

■ Appellant first contends that the trial court erred in granting summary judgment on her MPA claim against Respondents by requiring evidence that (1) she relied on the appraisal and (2) such reliance caused her damages. In pertinent part, the MPA states:

> The act ... of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. RSMo § 407.0201. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action ... to recover actual damages. § 407.025.1.
> Merchandise includes any objects, wares, goods, commodities, intangibles, real estate or services. § 407.010(4).

■ The purpose of the MPA is "to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Nixon v. Beer Nuts, Ltd.,* 29 S.W.3d 828, 837 (Mo.App. E.D.2000). The Act "eliminates the need for the Attorney

General to prove intent to defraud or reliance in order for the court to find that a defendant has engaged in unlawful practices." *Id.* "Intent and reliance are not necessary elements of the cause of action." *State ex rel. Webster v. Areaco Inv. Co.,* 756 S.W.2d 633, 636 (Mo.App. E.D.1988). "Once the court finds that a violation of the Act has occurred or is about to occur, irreparable harm and harm to the public are presumed." *Beer Nuts,* 29 S.W.3d at 837–838. While these authorities form the support for the issuance of an injunction in MPA cases brought by the attorney general, we have previously recognized their utility in illuminating the spirit of the legislation as applicable to private causes of action. See *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 900 (Mo.App. E.D.2003). In a private suit, a plaintiff must demonstrate that she: (1) purchased merchandise (which includes services) from the defendants (2) for personal, family, or household purposes and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful under section 407.020. *Chochorowski v. Home Depot U.S.A., Inc.,* 295 S.W.3d 194, 198 (Mo.App. E.D.2009)

■ Guided by the foregoing authorities, and viewing the record in the light most favorable to Appellant and granting her all reasonable inferences from the evidence, we are compelled to conclude that Respondents are not entitled to summary judgment on this count. Contrary to the trial court's analysis, Appellant need not establish reliance as an element of her MPA claim. It is undisputed that Appellant purchased an appraisal from Respondents for personal purposes. It is also uncontroverted that Appellant paid $275 for the appraisal. This alone constitutes an ascertainable loss under the MPA.[5] *See*

5. Moreover, the trial court did not question the existence of Appellant's larger damages,

*Clement,* 103 S.W.3d at 900 (loss in the form of lease payments); *compare Freeman Health System v. Wass,* 124 S.W.3d 504 (Mo.App. S.D.2004) (no loss where consumer never paid for merchandise). Additionally, Appellant presented evidence—particularly the market data report, HUD warning, and her expert's appraisal—giving rise to a genuine issue of material fact as to whether Respondents' appraisal was deceptive, fraudulent, misrepresentative, omitted material facts, or otherwise unlawful. As such, the trial court erred in granting Respondents summary judgment on Appellant's MPA claim. Point granted.

*Negligence Causation*

■ In her second point Appellant contends that the trial court erred in granting Respondents summary judgment on her negligence claim in that the court invaded the province of the jury on the issue of causation. In granting summary judgment, the trial court reasoned that Respondents had nothing to do with the transaction "other than" appraising the property. Appellant takes issue with the court's description of the "routine appraisal" as ancillary and argues that, to the contrary, Respondents' grossly inflated appraisal was central to the defendants' scheme.

Respondents claim that "not a scintilla" of evidence supports Appellant's contention that she or even the lender relied on the appraisal as a condition of the loan. We find Respondents' position disingenuous. The very purpose of an appraisal is to determine fair market value as estimated by a disinterested expert whose knowledge, access to information, and professional independence lend reliability to the valuation.[6] Appraisals are meant to inform the decisions of buyers and sellers and are required by mortgage lenders to determine the amount of a loan.[7] Respondents' implication that the lender still would have loaned Appellant $115,000 when the collateral was worth only some fraction of that amount—or without an appraisal at all—is not credible.

Moreover, the record contains sufficient evidence supporting an inference of reliance, and thus causation, to withstand summary judgment. The appraisal was initiated by the mortgage broker, submitted to the lender, and compiled with the loan documents for closing. Appellant testified that she wasn't "good at pricing houses" and didn't really know what the house was worth but she trusted Mark and Stacy's representations that the "total rehab" on which the purchase price was based would be completed by the closing. A jury could reasonably infer that Respondents' purportedly independent appraisal affirmed Appellant's trust in the professionals driving the transaction or that, inversely, a drastically inferior valuation would have raised Appellant's suspicion and empowered her to "back out" as she had previously attempted. Further, notwithstanding Appellant's own naiveté, a jury also could reasonably infer that the bank relied on the appraisal and that, inversely, a five-figure appraisal would have defeated Appellant's six-figure loan application and caused the bank to halt the

as evidenced by its denial of summary judgment for other defendants.

6. *See generally, Principles of Appraisal Practice and Code of Ethics,* AMERICAN SOCIETY OF APPRAISERS, http://www.appraisers.org/ ProfessionalStandards/CodeOfEthics. aspx# 2.2 (last visited April 18, 2011).

7. Guy Cozzi, *Purpose of a Real Estate Appraisal* (2007), http://www.realestateabc.com/home guide/purpose-appraisal.htm (last visited April 18, 2011).

deal. *See Miller v. Big River Concrete, LLC,* 14 S.W.3d 129 (Mo.App. E.D.2000) and *Dueker v. Gill,* 175 S.W.3d 662 (Mo. App. S.D.2005) (privity not required as an element of negligent representation; plaintiff need only be part of a limited group for whose guidance the information was provided).

In sum, a genuine issue of material fact exists as to whether Appellant or the lender relied on Respondents' appraisal in support of the mortgage loan and thus whether Respondents caused Appellant's damages. Point granted.

*Conspiracy*

■ Finally, Appellant contends that the trial court erred in granting Respondents summary judgment on her conspiracy claim in that the evidence was sufficient to survive summary judgment.

■ A civil conspiracy consists of (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful acts, and (5) damages as the proximate result thereof. *Dickey v. Johnson,* 532 S.W.2d 487, 502 (Mo.App. 1976). In granting Respondents summary judgment on this count, the trial court reasoned that the record contained no evidence of conspiracy beyond mere speculation. Notably, however, the trial court denied summary judgment against other defendants in the alleged conspiracy. Appellant suggests that the evidence belies Respondents' exemption. Our review of the record reveals the following: (1) Respondents maintained office space adjacent to, and frequently conducted business with, defendants Unique Realty and its owners, Mark and Stacy Ware; (2) Mark Ware's asking price for the property ($115,000) presumed significant renovations prior to closing; (3) Stacy Ware's request for appraisal, submitted to Respondents, disclosed the asking price; (4) Mark was present for the appraisal and walked through the house with Ms. Atkins; (5) Respondents' appraisal came back at exactly the price ($115,000) and indicated that "the subject has just completed renovation" even though almost none of the anticipated renovations on which Mark's asking price was based had been accomplished; (6) Mark had purchased the property just six weeks earlier for $67, 294; (7) a HUD report signaled a suspiciously high valuation; (8) market data for the neighborhood indicated an average of $48,930 and a high of $72,057; and (9) Appellant's expert valued the property at $40,000 and described Respondents' appraisal as "fictitious."

When determining whether a genuine issue of material fact exists so as to preclude summary judgment, circumstantial evidence is viewed no differently from direct evidence. *Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432, 440 (Mo. App. S.D.1998). Viewing the record in the light most favorable to Appellant and granting her the benefit of all reasonable inferences, we cannot say on the foregoing facts that Respondents here were entitled to judgment as a matter of law. Point granted.

### Conclusion

The trial court's summary judgment in favor of Respondents is reversed, and the cause is remanded for further proceedings. Respondents' cross-appeal for attorney fees as a prevailing party is therefore denied as moot.

SHERRI B. SULLIVAN, P.J. and LAWRENCE E. MOONEY, concur.