**Thomas E. SCHERER, Plaintiff,**

v.

**The CURATORS OF THE UNIVERSITY OF MISSOURI AND LAW SCHOOL ADMISSION COUNCIL, Defendants.**

**No. 01–2085–JWL.**

United States District Court, D. Kansas.

July 18, 2001.

---

Thomas E Scherer, Merriam, KS, pro se.

Daniel D. Crabtree, Stinson, Mag & Fizzell, P.C., Leawood, KS, Brian R. Markley, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for UMKC School of Law, Law School Admission Council.

Katharine S. Bunn, University of Missouri, Columbia, MO, for Curators of the University of Missouri.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this civil rights action, plaintiff, appearing *pro se*, alleges that he was denied admission to the University of Missouri at Kansas City School of Law, that the school did not comply with its admission policy and that the school engaged in arbitrary and capricious admission standards and policies. This matter is presently before the court on defendant The Curators of the University of Missouri's motion to dismiss plaintiff's complaint, pursuant to Fed. R.Civ.P. 12(b)(2), for lack of personal jurisdiction (doc. # 21) and plaintiff's request for a preliminary injunction (doc. # 26). As set forth in more detail below, defendant's motion to dismiss is denied, but the court transfers plaintiff's case, along with his pending motion for a preliminary injunction, to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1631.

### I. Background

Plaintiff is a Kansas resident who applied for admission to the Law School at the University of Missouri at Kansas City, a public university located in the State of Missouri. In that regard, plaintiff mailed his application materials and sent various letters and electronic mail (e-mail) messages concerning his application to the Law School from his residence in Kansas. Plaintiff also visited the Law School on occasion to inquire about the status of his application. It is undisputed that no one from the Law School ever traveled to Kansas to communicate with plaintiff. It is further undisputed that no one from the Law School ever recruited plaintiff or otherwise encouraged him to apply for admission. In fact, the only "contacts" that the Law School had with the State of Kansas with respect to plaintiff consisted of re-

sponding to plaintiff's application for admission.

Specifically, on January 19, 2001, Jean Klosterman, the Director of Admissions for the Law School, sent an e-mail message to plaintiff at his home in Kansas advising plaintiff that his request to use a 1987 Law School Admission Test (LSAT) score was "brought before the Admissions Committee" and that the "use of the 14–year old LSAT score was not approved by the Committee." The e-mail further advised plaintiff that he would need to retake the LSAT before his application would be reviewed and considered for the Fall 2001 entering class. Plaintiff's complaint also references one telephone conversation that plaintiff had with Ms. Klosterman concerning admissions criteria. While plaintiff's complaint is silent on the issue, the court presumes that plaintiff was at his residence in Kansas during the phone conversation. Nothing in plaintiff's complaint or in the record reflects who initiated this phone call. Finally, on May 30, 2001, Matt Davis, Assistant Dean at the Law School, sent a letter to plaintiff at his home in Kansas advising plaintiff that he had been placed on the "Waiting List" for the Fall 2001 entering class.

The Law School's "general" contacts with the State of Kansas are also limited. It is undisputed, for example, that The Curators do not have an office in Kansas and do not have a registered agent for service of process in Kansas. By affidavit of defendant's General Counsel, it appears that the Law School "does make information about the Law School available to students at colleges and universities in the State of Kansas and does respond to inquiries from Kansas residents, but does not engage in mass mailings to all the college graduates living in Kansas." Plaintiff points to the Law School catalog as evidence that the school draws heavily from and reaches out to the metropolitan area, including Kansas, and that the school operates on a national basis, not just within the borders of Missouri. Specifically, plaintiff highlights the following passages from the Law School catalog, found in a section entitled "Message from the Dean":

> Frankly, with more than 500 students (including J.D., LL.M. and "Flex" students), 4000–plus graduates throughout the Metroplex alone, and other alumni and alumnae spread from D.C. to California and Alaska to Florida, there should be little wonder that we are widely disbursed, but even more widely connected.
>
> \* \* \* \* \* \*
>
> We start with the fact that we are one of the few public law schools located in the hub-city of a metropolitan region where no other law schools exist.
>
> \* \* \* \* \* \*
>
> Not surprisingly, it is from here-across this Metroplex-that our laws, commerce, finances, and social, political and civic transactions will increasingly affect the lives of people across throughout [sic] the Metroplex, The State, and the Nation.

Plaintiff also points out references in the catalog to "virtual offices" and highlights the Law School's website as evidence that the school operates beyond the Missouri state lines. Finally, plaintiff contends (and the school does not dispute) that the school employs Kansas residents and admits students from a variety of states, including Kansas.

## II. Discussion

Defendant argues that plaintiff's action must be dismissed for lack of personal jurisdiction. The party bringing the action bears the burden of establishing personal jurisdiction over the defendant. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102

F.3d 453, 456 (10th Cir.1996). When the motion is decided on the basis of affidavits and other written materials, however, the plaintiff need only make a prima facie showing, and all factual disputes are resolved in that party's favor. *Id.* Resolving all doubts in plaintiff's favor, the court concludes that plaintiff has not met his burden of making a prima facie showing that defendant is subject to the jurisdiction of this court.[1] Thus, the court will transfer plaintiff's case to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1631. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 (10th Cir.1998) (where transferor court notes that it lacks personal jurisdiction, the proper course of action is to transfer pursuant to § 1631) (citing *Ross v. Colorado Outward Bound School, Inc.*, 822 F.2d 1524, 1526–27 (10th Cir. 1987)).[2]

Before a federal court can exercise personal jurisdiction over a defendant in a federal question case such as this one, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir.2000). Neither of these two prongs is met in the instant case. First, the Tenth Circuit has held that 42 U.S.C. § 1983 does not provide for nationwide service of process. *See McChan v. Perry,* No. 00–2053, 2000 WL 1234844, at *1 (10th Cir. Aug.31, 2000). Second, as explained more fully below, plaintiff's evidence regarding defendant's contacts with Kansas is insufficient to permit the court to find that defendant purposefully availed itself of the privilege of conducting activities in Kansas and could

---

1. As an initial matter, plaintiff contends that personal jurisdiction has been established because defendant has been served with a summons. In support of his argument, plaintiff directs the court to Federal Rule of Civil Procedure 4(k)(1). Plaintiff, however, has failed to read Rule 4(k)(1) in its entirety. When read in its entirety, it is clear that "service of a summons ... is effective to establish jurisdiction over the person of a defendant" only in certain circumstances enumerated in subsections (A) through (D), none of which apply here.

Plaintiff also argues that personal jurisdiction is appropriate by virtue of 28 U.S.C. § 1331 and/or 42 U.S.C. §§ 1981, 1983, 2000a–6 and 2000c–8. Section 1331, however, addresses the subject matter jurisdiction of the federal courts (*i.e.,* the types of cases that federal courts can hear, like cases involving "federal questions" under section 1331), not personal jurisdiction over a particular defendant. Similarly, the other statutes referenced by plaintiff simply authorize federal courts to hear cases involving claims under those statutes because those kinds of claims involve questions of federal law. In other words, these statutes deal with subject matter jurisdiction of the federal courts. In that regard,

it is undisputed that the federal courts have jurisdiction to hear plaintiff's claims in this case because the subject matter of plaintiff's lawsuit is based on a "federal question." The question raised by defendant's motion, however, is whether this particular federal court is authorized to hear plaintiff's case in light of the nature and extent of defendant's contacts with the forum state (*i.e.,* personal jurisdiction).

2. Section 1631 states, in relevant part, as follows:

Whenever a civil action is filed in a court ... or an appeal ... is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

reasonably anticipate being brought into court in this state.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *accord Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir.2000) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). This standard may be met in two ways. First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon,* 205 F.3d at 1247 (quoting *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174). Second, a court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996); *see also Intercon,* 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."). As set forth below, the court concludes that it has neither specific nor general jurisdiction over defendant. Accordingly, defendant's motion to dismiss is denied, but the court transfers plaintiff's case to the United States District Court for the Western District of Missouri.

### 1. General Jurisdiction

■ The court first addresses whether the assertion of general jurisdiction over defendant is warranted because of any contacts defendant has had with Kansas that are unrelated to plaintiff's cause of action. As discussed above, a nonresident defendant may be subject to a state's jurisdiction even when the alleged injury is not related to the defendant's contacts with the forum state as long as the unrelated contacts are continuous and systematic enough "that the defendant could reasonably anticipate being haled into court in that forum." *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1543 (10th Cir.1996) (citations omitted). With respect to defendant's unrelated contacts with Kansas, the record demonstrates only that the Law School "makes information available" to prospective students in Kansas and elsewhere; that the Law School maintains a website that is accessible from foreign jurisdictions, including Kansas; that the Law School employs Kansas residents on its staff; and that the Law School attracts and admits students from a variety of states, including Kansas. Bearing in mind that it is plaintiff's burden to establish the nature and extent of the Law School's contacts with Kansas, the court concludes that plaintiff has not succeeded in showing a sufficient nexus between the Law School and Kansas to subject the Law School to personal jurisdiction for claims arising from non-forum related activities.

As an initial matter, plaintiff has directed the court to no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state and, in fact, every case which the court has uncovered holds directly to the contrary. *See Gehling v. St. George's Sch. of Medicine, Ltd.,* 773 F.2d 539 (3d Cir.1985); *Gallant v. Trustees of Columbia University in City of New York,* 111

F.Supp.2d 638 (E.D.Pa.2000); *Park v. Oxford University,* 35 F.Supp.2d 1165 (N.D.Cal.1997), *aff'd,* 165 F.3d 917, 1998 WL 823385 (9th Cir.1998); *Hardnett v. Duquesne University,* 897 F.Supp. 920 (D.Md.1995); *Norris v. Oklahoma City University,* No. C–93–1626–VRW, 1993 WL 313122 (N.D.Cal. Aug.3, 1993), *aff'd,* 21 F.3d 1115, 1994 WL 127175 (9th Cir. 1994); *Ross v. Creighton University,* 740 F.Supp. 1319 (N.D.Ill.1990), *rev'd in part on other grounds,* 957 F.2d 410 (7th Cir. 1992). A review of these cases and, more specifically, the types of contacts alleged in these cases, reveals that the Law School is simply not subject to general jurisdiction in Kansas.

In *Gehling,* for example, the Third Circuit held that St. George's School of Medicine, a Caribbean institution, did not have a sufficient nexus to Pennsylvania to subject the school to general jurisdiction despite the fact that St. George's advertised in national newspapers that circulated in Pennsylvania; counted Pennsylvania residents among its student body; sent school representatives to Philadelphia as part of a "media swing" intended to raise St. George's profile; and entered into an agreement with a Pennsylvania college to establish a joint international program combining pre-medical studies in Pennsylvania with medical training in Grenada. 773 F.2d at 541–42. In concluding that these contacts were insufficient, the Third Circuit emphasized that a school's student body, or the fact that it received funds from these students, could not support jurisdiction:

> [T]he fact that some of St. George's students are Pennsylvania residents does not signify a relevant business contact. Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides.

Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment. For the same reason, the fact that St. George's may be said to derive some percentage of its revenue from Pennsylvania residents in return for services provided in Grenada does not subject it to *in personam* jurisdiction.

*Id.* at 542–43 (citations omitted).

Following the Third Circuit's lead, other courts analyzing analogous cases have held that an out-of-state school is not subject to general jurisdiction simply because it may draw students from the forum state, receive revenue from the forum state through tuition or fundraising activities, or have contacts with alumnae in the forum state. *See, e.g., Gallant,* 111 F.Supp.2d at 640 (no general jurisdiction despite the fact that school's student body included Pennsylvania residents whose tuition generated income for the school and the school held fundraising activities in Pennsylvania); *Park,* 35 F.Supp.2d at 1167 (fact that Oxford solicits money from California residents as a "important form of fundraising" insufficient to establish general jurisdiction over Oxford); *Norris,* No. C–93–1626–VRW, 1993 WL 313122, at *2 (fact that university maintained contact with current students and alumni within forum state insufficient to constitute "continuous and systematic" contacts for purposes of general jurisdiction); *Ross,* 740 F.Supp. at 1323 (no general jurisdiction despite fact that significant number of forum residents attended out-of-state school). Along the same lines, courts have held that an out-of-state school is not subject to general jurisdiction based on general recruiting or solicitation efforts aimed at a particular state. *See, e.g., Gallant,* 111 F.Supp.2d at 640 (no general jurisdiction despite recruitment activities in Pennsylvania); *Hardnett,* 897 F.Supp. at 923 (no general jurisdiction over university even if

recruiter visited college fair in forum state and even if toll-free number was made available to students in forum state to enable students to obtain more information about university); *Ross,* 740 F.Supp. at 1323 (no general jurisdiction even assuming college employed full-time recruiter in forum state to encourage residents to attend and supported recruitment effort with direct-mail to prospective students in forum state).

For the reasons set forth in *Gehling* and the cases following *Gehling,* the court concludes that the Law School's general references to the "metroplex," the admission of students from Kansas, and the making available of information are not sufficiently "continuous and systematic" contacts to make the Law School susceptible to every sort of claim that might be filed in Kansas, including those unrelated to the specific transaction in this case. Similarly, the mere fact that the Law School employs Kansas residents is not sufficient to confer general jurisdiction. *See Gallant,* 111 F.Supp.2d at 642 (no general jurisdiction despite allegation that employees of out-of-state school regularly traveled to forum state); *Gelineau v. New York University Hosp.,* 375 F.Supp. 661, 666 (D.N.J.1974) ("It is true that some of [the hospital's] employees reside in New Jersey, but that, in and of itself, does not mean that New York University Hospital does business in New Jersey, or wherever else its employees happen to reside.") (no general jurisdiction over hospital). Finally, the Law School's maintenance of a website that, according to plaintiff, "can be accessed internationally" and through which interested students may contact the Director of Admissions "from anywhere in the world" does not constitute "substantial and continuous local activity" for general jurisdiction purposes. Based on plaintiff's allegations, the Law School's website does not appear to be the type of website that would subject its creator to personal jurisdiction in

Kansas. Rather, the site appears to be a "passive Web site that does little more than make information available to those who are interested" and one in which the Law School has "simply posted information ... which is accessible to users in foreign jurisdictions." The Tenth Circuit has held unequivocally that this type of website is insufficient to subject a non-resident defendant to general jurisdiction. *See Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1296–97 (10th Cir.1999).

In summary, the contacts upon which plaintiff relies to support the exercise of general jurisdiction are simply insufficient to demonstrate that the Law School's business contacts with this forum are "continuous and systematic." To hold otherwise would render the Law School and any similar institution subject to general jurisdiction in most, if not all, states. *See Gallant,* 111 F.Supp.2d at 643. For all the foregoing reasons, the exercise of general jurisdiction is not appropriate.

2. Specific Jurisdiction

■ Having concluded that the Law School is not subject to general personal jurisdiction in Kansas, the court turns to address whether it may exercise specific jurisdiction over the Law School. In resolving this issue, the court analyzes whether defendant has "purposefully directed" its activities toward Kansas and whether the litigation results from alleged injuries that arise out of or relate to those activities. *See Kuenzle v. HTM Sport– Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). In support of his contention that this court has specific jurisdiction over the Law School, plaintiff points to his sending of application materials from the forum state, his sending of follow-up letters and e-mails from the forum state, and his receipt of an e-mail, a letter and a

telephone call from the Law School in the forum state. Bearing in mind the relevant standards for establishing jurisdiction over forum-related activities, the court cannot conclude that the Law School "purposefully availed" itself of the privilege of acting within Kansas by virtue of its responses to plaintiff's inquiries.

As it did in connection with its discussion of general jurisdiction, the court begins with the Third Circuit's decision in *Gehling* where the court, after analyzing contacts less tenuous than those present here, declined to find that St. George's medical college had purposefully availed itself of the privilege of acting within Pennsylvania. In *Gehling*, the record reflected that the appellants' decedent applied from Pennsylvania for admission to St. George's, that this application was accepted in Grenada, that St. George's sent mail into Pennsylvania advising the prospective student of his acceptance and of other information concerning matriculation, and that appellants' decedent responded by mailing the requested tuition from Pennsylvania. 773 F.2d at 544.[3] Following *Gehling*, the court in *Hardnett* rejected a claim of specific jurisdiction on facts similar to those present here. In *Hardnett*, the out-of-state university sent literature and a subsequent letter of acceptance to the plaintiff in the forum state. 897 F.Supp. at 923. Similarly, the court in *Norris* held that the mere mailing of transcripts at the plaintiff's request to the forum state was insufficient to confer specific jurisdiction over the university. No. C–93–1626–VRW, 1993 WL 313122, at *4 (N.D.Cal. Aug.3, 1993) ("Defendant's compliance with such a request by plaintiff cannot be deemed purposeful availment of

California law or a basis upon which defendant could reasonably anticipate being haled into court here."). These cases, then, clearly support the conclusion that the exercise of specific jurisdiction over the Law School would be inappropriate.

Indeed, the court has uncovered only a handful of cases in which the trial court exercised specific jurisdiction over an out-of-state college or university and each of these cases involved some level of active solicitation or recruitment by the college or university with respect to the individual plaintiff. As the Missouri Court of Appeals recognized in *Davis v. Baylor University*, "courts are more prone to find that recruitment contacts justify the assertion of specific personal jurisdiction when the recruitment process involves the physical presence of the defendant's agents in the forum state, as opposed to contact by mail or phone." 976 S.W.2d 5, 12 (Mo.Ct. App.1998). In articulating this principle, the court reviewed numerous cases analyzing specific jurisdiction in the context of a student bringing an action against an out-of-state college or university. *See id.* at 9–12 (discussing both federal and state cases at length). In *Davis*, the Missouri Court of Appeals ultimately determined that the exercise of specific jurisdiction over Baylor was appropriate because Baylor's contacts with the state involved "the dispatching of agents to the forum state to actively recruit a resident," including seven trips to Missouri made by an assistant coach and three trips by another assistant coach. *Id.* at 13 (acknowledging significance of active solicitation and reiterating that contacts are insufficient "when a Missouri plaintiff solicits or initiates contact with an out-of-

---

**3.** The Third Circuit's decision in this regard applied only to the appellants' claims for negligence and breach of contract. *See* 773 F.2d at 544. With respect to the appellants' claims for fraudulent misrepresentation and emotional distress, the Circuit found that St.

George's had sufficient contacts with Pennsylvania to permit the district court to exercise specific jurisdiction because an agent of St. George's had traveled to Pennsylvania to return the decedent's body. *See id.*

state defendant, but sufficient when the defendant engages in persistent solicitation of the plaintiff"); *accord Ross v. Creighton University*, 740 F.Supp. at 1324–25 (court exercised specific personal jurisdiction under the "transaction of business" provision of the Illinois long-arm statute in large part because Creighton representatives "came into Illinois on four occasions to discuss" the plaintiff-athlete's enrollment). Here, of course, the Law School did not actively solicit or recruit plaintiff. It is undisputed that no one from the Law School ever came into Kansas for purposes of discussing plaintiff's admission to the Law School. The Law School's sending of one e-mail and one letter and placing one phone call can hardly be considered "persistent" solicitation. In fact, there is no evidence that the Law School initiated any contacts with plaintiff whatsoever-they merely responded to plaintiff's inquiries. In such circumstances, the court declines to exercise specific jurisdiction over the Law School. *See also Springer v. Balough*, 96 F.Supp.2d 1250, 1255 (N.D.Okla.) (merely responding to plaintiff's letter asking for placement upon states' ballots insufficient to establish specific personal jurisdiction), *aff'd*, 232 F.3d 902, 2000 WL 1616246 (10th Cir.2000) ("The only contacts that Mr. Springer has alleged between the non-resident defendants and Oklahoma are the responses some of the Defendants sent to Mr. Springer, denying his request to be listed on the general election ballot. We deem this insufficient to provide a prima facie showing of personal jurisdiction.").

In conclusion, the court concludes that its exercise of personal jurisdiction over defendant with respect to plaintiff's case would violate the requirements of due process. Accordingly, the court denies defendant's motion to dismiss plaintiff's complaint, but transfers plaintiff's case to the United States District Court for the West-

ern District of Missouri pursuant to 28 U.S.C. § 1631.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss plaintiff's complaint (doc. # 21) is **denied;** but plaintiff's case is **transferred,** along with plaintiff's pending motion for a preliminary injunction (doc. # 26) and any other motions pending as of the date of this order, to the **United States District Court for the Western District of Missouri** pursuant to 28 U.S.C. § 1631.

**IT IS SO ORDERED.**